1  Brendan P. Cullen (SBN 194057)
   (cullenb@sullcrom.com)
2  Sverker K. Hogberg (SBN 244640)
   (hogbergs@sullcrom.com)
3  SULLIVAN & CROMWELL LLP
   550 Hamilton Avenue
4  Palo Alto, California 94301
   Telephone:  (650) 461-5600
5

6  *Counsel for Defendants Scott Powell, Michael
   Santomassimo, Carly Sanchez, Kleber Santos, and
7  Jonathan Weiss*

8  [*Additional counsel listed on signature page*]

9

10

11                  **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14
                                                     Lead Case No. 3:22-cv-05173-TLT
15

16                                                   **DEFENDANTS SCOTT POWELL,**
                                                     **MICHAEL SANTOMASSIMO,**
17  IN RE WELLS FARGO & COMPANY                      **CARLY SANCHEZ, KLEBER SANTOS,**
    HIRING PRACTICES DERIVATIVE                      **AND JONATHAN WEISS'S REPLY IN**
18  LITIGATION                                       **SUPPORT OF MOTION TO DISMISS**
                                                     **THE AMENDED COMPLAINT**
19  This Document Relates To:

20       ALL ACTIONS                                 Hearing:  August 27, 2024
                                                     Time:  2:00 p.m.
21                                                   Courtroom 9, 19th Floor
                                                     The Honorable Trina L. Thompson
22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

I.      PLAINTIFFS CANNOT AVOID THE REQUIREMENT TO PLEAD DEMAND FUTILITY FOR THEIR CLAIMS AGAINST THE OFFICER DEFENDANTS.............................................2

II.     THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO PLEAD FAILURE-OF-OVERSIGHT CLAIMS AGAINST THE OFFICER DEFENDANTS.........................................3

     A.     Plaintiffs' Opposition Confirms Their Failure Adequately To Allege that any Officer Defendant Acted in Bad Faith. .............................................................................3

     B.     Plaintiffs' Opposition Repeats Generic Assertions about the Officer Defendants' Areas of Responsibility without Responding to Defendants' Arguments. ......................................4

     C.     Plaintiffs' Opposition Does Not Identify any Red Flags that the Officer Defendants Ignored. ...........................................................................................................6

III.    THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO STATE SECTION 10(b) CLAIMS AGAINST THE OFFICER DEFENDANTS. .........................................................7

     A.     Plaintiffs Fall Short of Demonstrating that the Officer Defendants Had Ultimate Authority for the Challenged Statements Made by Wells Fargo..............................7

     B.     Plaintiffs Fail To Explain How any of the Challenged Statements Were False or Misleading. .........................................................................................................8

     C.     Plaintiffs Have No Response to the Absence of Scienter Allegations as to the Officer Defendants. ........................................................................................................9

IV.     THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO STATE SECTION 20(a) CLAIMS AGAINST THE OFFICER DEFENDANTS. .......................................................10

V.      THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO STATE A SECTION 20A CLAIM AGAINST SANTOS.........................................................................................12

CONCLUSION.......................................................................................................13

**TABLE OF AUTHORITIES**

**Page**

*Abdo* v. *Fitzsimmons*,
2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ...................................................................................8

*Beam* v. *Stewart*,
833 A.2d 961 (Del. Ch. 2003).......................................................................................................3

*Grabski* v. *Andreessen*,
2024 WL 390890 (Del. Ch. Feb. 1, 2024) ................................................................................2, 3

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) .........................................................................................8

*Hefler* v. *Wells Fargo & Co.*,
2018 WL 1070016 (N.D. Cal. Feb. 27, 2018) ...............................................................................8

*Howard* v. *Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .....................................................................................................11

*In re Maxim Integrated Prods., Inc., Derivative Litig.*,
574 F. Supp. 2d 1046 (N.D. Cal. 2008) .......................................................................................11

*In re Maxim Integrated Prods., Inc. Sec. Litig*,.
639 F. Supp. 3d 1038 (N.D. Cal. 2009) ..................................................................................10, 11

*Kyung Cho* v. *UCBH Holdings, Inc.*,
890 F. Supp. 3d 1190 (N.D. Cal. 2012) .......................................................................................11

*Orbis Glob. Equity Fund Ltd.* v. *NortonLifelock Inc.*,
2023 WL 1800963 (D. Ariz. Feb. 7, 2023)..................................................................................12

*Petrie* v. *Elec. Game Card, Inc.*,
2011 WL 165402 (C.D. Cal. Jan. 12, 2011) ..................................................................................8

*Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .....................................................................................................10

*Prodanova* v. *H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) .....................................................................................................10

*Purple Mountain Tr.* v. *Wells Fargo & Co.*,
432 F. Supp. 3d 1095 (N.D. Cal. 2020) .......................................................................................11

*SEB Inv. Mgmt. AB* v. *Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) .......................................................................................12

*SEB Inv. Mgmt. AB* v. *Wells Fargo & Co.*,
2023 WL 11691540 (N.D. Cal. Aug. 18, 2023) ...............................................................9, 10, 11

-ii-

*Segway* v. *Cai*,
2023 WL 8643017 (Del. Ch. 14, 2023) ........................................................................4

*Stack* v. *Lobo*,
903 F. Supp. 1361 (N.D. Cal. 1995) .......................................................................7, 8

*Tellabs, Inc.*, v. *Makor Issues & Rights*,
551 U.S. 308 (2007) ....................................................................................................8

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
282 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................10

*Zucco Partners, LLC* v. *Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ......................................................................................9

THE OFFICER DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT
LEAD CASE NO. 3:22-CV-05173-TLT

1    If the Court grants Wells Fargo's motion to dismiss based on Plaintiffs' failure adequately to plead

2  demand futility (the "Rule 23.1 Motion"), the Court does not need to reach any of the arguments made in

3  the Officer Defendants' separate Motion.[1]  As Wells Fargo explains in its Rule 23.1 Motion, Plaintiffs

4  lack derivative standing to pursue *any* claims on behalf of the Company because Plaintiffs have failed to

5  plead particularized facts showing that a majority of the Board cannot disinterestedly or independently

6  evaluate a litigation demand.  But even putting aside this threshold deficiency, the claims against the

7  Officer Defendants fail for at least five additional reasons.

8    *First*, even if Plaintiffs have adequately pleaded demand futility with respect to their claims against

9  the Director Defendants, they do not even attempt to make that showing for their claims against the Officer

10  Defendants specifically.  In the Opposition, Plaintiffs try to sidestep that requirement by vaguely claiming

11  that they need not separately plead demand futility for the claims against the Officer Defendants because

12  those claims and the claims against the Director Defendants are "related to similar facts." (Opp. 28.)  That

13  purported exception has no basis in Delaware law, which is clear that the demand-futility analysis proceeds

14  on a claim-by-claim basis.

15    *Second*, Plaintiffs fail adequately to allege that any of the Officer Defendants breached their

16  oversight duties by consciously failing, in bad faith, to monitor risks within their areas of responsibility

17  or to report red flags to the Board.  Plaintiffs make no effort to respond to Defendants' arguments

18  identifying deficiencies in Plaintiffs' *Caremark* claims.  Plaintiffs' Opposition instead focuses exclusively

19  on whether the Officer Defendants' areas of responsibility encompassed fair lending and diversity

20  hiring — missing the point that they must then allege particularized facts showing that the Officer

21  Defendants *actually acted in bad faith* in order to plead adequately their failure-of-oversight claims.

22    *Third*, Plaintiffs' Opposition confirms that Plaintiffs have failed adequately to state a Section 10(b)

23  claim against any of the Officer Defendants.  Plaintiffs do not explain how any of the Officer Defendants

24  had ultimate authority over certain challenged statements, instead repeating vague, boilerplate arguments

25  that authority can be presumed, even though those arguments have been repeatedly rejected by courts.  As

26

27  [1]    Although Plaintiffs filed an omnibus brief in opposition to the Rule 23.1 Motion and the Officer
Defendants' Motion, Wells Fargo and the Officer Defendants have filed separate reply briefs in support
28  of their separate motions.  (*See* ECF No. 168 ("23.1 Reply").)

SULLIVAN &
CROMWELL LLP

THE OFFICER DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT
LEAD CASE NO. 3:22-CV-05173-TLT

1    for falsity, Plaintiffs again argue that general descriptions of the Company's diversity hiring practices

2    were false because fake interviews were purportedly widespread.  But they still cannot point to any

3    particularized facts supporting that claim.  And Plaintiffs' Opposition abandons claims regarding the

4    falsity of statements concerning mortgage lending.  Finally, as for scienter, Plaintiffs continue to insist

5    that the Officer Defendants must have known about purported widespread fake interviews by virtue of

6    their roles or because they had access to unspecified data.  Courts in the Ninth Circuit routinely hold that

7    these kinds of non-particularized allegations cannot support a strong inference of scienter.

8          *Fourth*, Plaintiffs' Section 20(a) claims against the Officer Defendants fail because they have not

9    adequately pleaded any primary violation under the federal securities laws.  Even if they had, these claims

10   would still fail because Plaintiffs have not explained how any of the Officer Defendants had actual power

11   or control over any primary violator.

12          *Finally*, Plaintiffs' Section 20A claim against Santos fails because Plaintiffs have not adequately

13   pleaded that Santos sold his shares contemporaneously with Wells Fargo's share repurchases, as required

14   by the statute.  Plaintiffs' argument that it is enough to allege that Wells Fargo was consistently

15   repurchasing shares during the same month Santos sold his shares misunderstands Ninth Circuit precedent

16   holding that a plaintiff fails to plead contemporaneity where the defendant sells his or her shares for *less*

17   *than* the company buys them.

**I.       PLAINTIFFS CANNOT AVOID THE REQUIREMENT TO PLEAD DEMAND FUTILITY FOR THEIR CLAIMS AGAINST THE OFFICER DEFENDANTS.**

         Plaintiffs contend in their Opposition that they are not required to plead with particularity that

demand is futile as to the claims against the Officer Defendants because "the factual allegations underlying

claims against officers are 'congruous' with the facts underlying claims against directors."  (Opp. 28

(quoting *Grabski* v. *Andreessen*, 2024 WL 390890, at \*12 (Del. Ch. Feb. 1, 2024)).)  That argument

mischaracterizes Delaware law and Plaintiffs' own allegations.  Indeed, the Court of Chancery expressly

recognized in *In re McDonald's Corp. Stockholder Derivative Litigation* (*McDonald's I*) that "oversight

claims" *against officers* "are derivative, so the board controls the claim unless a stockholder can plead

demand futility or show wrongful refusal."  289 A.3d 343, 367 (Del. Ch. 2023).

         Contrary to the Opposition, *Grabski* does not say otherwise, and cannot relieve Plaintiffs from

-2-

SULLIVAN &
CROMWELL LLP

1   their burden of pleading particularized facts showing that demand is futile as to their claims against the

2   Officer Defendants.   In *Grabski*, the plaintiffs pursued Delaware state-law insider trading claims

3   derivatively against several directors and officers.  The plaintiffs alleged that "all Defendants received the

4   same [material, non-public information] at the same time and traded on that [material, non-public

5   information] around the same time."  2024 WL 390890, at *12.   In other words, there was "near-total

6   overlap in allegations" against the directors and officers, such that the demand futility analyses for the

7   claims against the directors and the claims against the officers would be *identical*. *Id.*  Plaintiffs' claims

8   against the Officer Defendants and the Director Defendants here, on the other hand, are distinct.  For

9   example, even if Plaintiffs are correct that the Director Defendants face a substantial likelihood of liability

10  for failing to implement a Board-level system for overseeing fair lending, that says little, if anything, about

11  whether they can fairly evaluate *separate* claims that the Officer Defendants failed to conduct their own

12  monitoring or failed to report red flags up to the Board.  Indeed, in this hypothetical example, the Director

13  Defendants may *want* the Company to investigate its claims against the Officer Defendants to establish

14  *why* the Board was not adequately informed.  Plaintiffs cannot simply ignore the claim-by-claim analysis

15  required under Delaware law by asserting that all of their *Caremark* claims generally involve fair lending

16  or diversity hiring practices.  *See Beam* v. *Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003) (the "[d]emand

17  futility analysis is conducted on a claim-by-claim basis").  The claims against the Officer Defendants

18  should be dismissed under Rule 23.1 for this reason alone.

19  **II.     THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO PLEAD FAILURE-OF-
        OVERSIGHT CLAIMS AGAINST THE OFFICER DEFENDANTS.**
20

21      **A.     Plaintiffs' Opposition Confirms Their Failure Adequately To Allege that any Officer
              Defendant Acted in Bad Faith.**

22      Plaintiffs do not even bother to defend the substance of their oversight claims against the Officer

23  Defendants.  As explained in the Officer Defendants' Motion (Off. Mot. 9-17), the Amended Complaint

24  lacks any factual allegations that the Officer Defendants failed, in bad faith, to oversee mortgage lending

25  or diversity hiring.  As for Plaintiffs' prong-one claims (requiring an "utter failure" to establish any system

26  for monitoring (*id*. at 9)), the pleadings show that management had implemented a monitoring system for

27  collecting information on fair lending and diversity hiring, and for reporting that information to the Board.

28

-3-

SULLIVAN &
CROMWELL LLP

(*Id.* at 10-13.)  Plaintiffs plead no facts suggesting that any Officer Defendants, to the extent they were responsible for these areas, failed to monitor them.  As for their prong-two claims (requiring a conscious failure to respond to red flags of which Officer Defendants became aware (*id.* at 9)), Plaintiffs do not even identify any red flags that would have alerted the Officer Defendants to misconduct regarding diversity hiring or discrimination in mortgage lending.  (*Id.* at 13-17.)

Rather than respond to these arguments, Plaintiffs focus their attention entirely on restating their allegations that the Officer Defendants' areas of responsibility encompassed fair lending and Company-wide compliance with the Diverse Slates Guidelines.  (Opp. 29-30.)  As explained below (*see infra* Section II.B), these allegations fail.  But regardless of whether the allegations concern a matter within any Officer Defendant's area of responsibility, Plaintiffs still need to plead particularized allegations of bad faith.  Plaintiffs do not explain in the Opposition how they have done so.  This failure also dooms Plaintiffs' *Caremark* claims against the Officer Defendants.

**B.**  **Plaintiffs' Opposition Repeats Generic Assertions about the Officer Defendants' Areas of Responsibility without Responding to Defendants' Arguments.**

The Opposition confirms Plaintiffs' failure to plead that Defendants Powell, Santomassimo, or Weiss were responsible for either mortgage lending or diversity hiring or that Santos was responsible for mortgage lending before the *Bloomberg* articles.  As for Santos's and Sanchez's responsibility for overseeing diversity hiring, Plaintiffs do not engage with Defendants' arguments explaining that the pleadings demonstrate regular monitoring by management, including by Santos specifically, and lack any factual allegations suggesting that either Santos or Sanchez abdicated their oversight duties in bad faith.

***Powell, Santomassimo, and Weiss***.  Plaintiffs' primary argument that Powell, Santomassimo, and Weiss "had responsibility for diversity initiatives" is that their "annual bonuses depended in part on their 'progress' on diversity initiatives."  (Opp. 29.)  As Defendants explained (Off. Mot. 11-12), that an executive's compensation is tied to his or her own progress in promoting diversity does not mean that Company-wide compliance with the Diverse Slates Guidelines or fair lending "fall within [the officer's] sphere of corporate responsibility."  *Segway* v. *Cai*, 2023 WL 8643017, at *4 (Del. Ch. 14, 2023).  Plaintiffs do not engage with Defendants' argument, and instead merely reiterate that DEI was a factor in compensation without explaining *why* that says anything about their responsibilities regarding diversity

1    hiring practices across the entirety of the Company.[2]

2         Plaintiffs also argue that Santomassimo's area of responsibility included the Company's fair

3    lending practices because he was "responsible for the Company's financial management functions."

4    (Opp. 29.)  Plaintiffs thereby conflate Company-wide financial management with the Company's lending

5    business.  Santomassimo, as the Company's Chief Financial Officer, is responsible for Wells Fargo's

6    financial management, financial planning, and financial risk.  *See McDonald's I*,  289 A.3d at 369-70

7    ("For example, the Chief Financial Officer is responsible for financial oversight and for making a good

8    faith effort to establish reasonable information systems to cover that area.").  Plaintiffs seem to believe

9    that because lending is "financial" (in the sense that it involves money), Santomassimo's financial remit

10   covers all aspects of mortgage lending, too.  But Wells Fargo is a bank — virtually every aspect of its

11   business implicates "finance" in some sense.  That does not mean that the CFO is responsible for each and

12   every one of the Company's business and product lines.  Under Plaintiffs' theory, it is not clear what

13   Santomassimo, or the CFO of any financial institution for that matter, would *not* be responsible for.

14        Plaintiffs finally contend that Powell was responsible for overseeing the Guidelines because he

15   was one of hundreds of recipients of Joe Bruno's September 2021 email.  (Opp. 29.)  But it is not clear

16   why the fact that Bruno chose to include Powell among the nearly 250 recipients of an email says anything

17   about whether Powell's specific responsibilities included Company-wide compliance with the Guidelines.

18        ***Santos***.  Plaintiffs insist that "Santos's areas of responsibility as Wells Fargo's former Head of

19   Diverse Segments, Representation, and Inclusion, and since July 2022, CEO of Consumer Lending,

20   included ensuring that the Company did not engage in illegal discrimination." (*Id.*)  This argument again

21   ignores Defendants' arguments.

22        As for fair lending, Plaintiffs' only response is that Santos was "CEO of Consumer Lending"

23

24   ───────────────
     [2]     If Plaintiffs mean to argue that Weiss consciously chose not to oversee purported widespread fake
25   interviews within his line of business (Corporate and Investment Banking), then this argument also fails
     because Plaintiffs do not adequately allege a single fake interview within that department, let alone that
26   they were widespread.  The most they offer is that Weiss was "below target for the Diverse Search
     Requirement Program" in 2021 and thus "subjected" to "a monthly monitoring process," which
27   supposedly gave him "a motive and incentive to orchestrate additional fake interviews." (AC ¶¶ 299,
     300.)  This comes nowhere close to adequately alleging that Weiss failed, in bad faith, to oversee
28   widespread fake interviews within his department.

SULLIVAN &
CROMWELL LLP

"since July 2022." (*Id.*)  But as Defendants explained, July 2022 was four months *after* the *Bloomberg* articles were published.  Plaintiffs say nothing, in either their Amended Complaint or in their Opposition, about Santos's monitoring efforts after he became CEO of Consumer Lending, let alone how any of those efforts do or do not give rise to a claim against him.

As for diversity hiring, Defendants again do not dispute that Santos, as Head of Diverse Segments, Representation, and Inclusion, was responsible for the Guidelines.  (Off. Mot. 13.)  Defendants' argument is that the Amended Complaint and the documents it incorporates by reference demonstrate that Santos in fact actively monitored diversity hiring and the Company's implementation of the Guidelines, including by preparing and sharing periodic "Diverse Segments, Representation, and Inclusion" status updates to the Board.  (*See*, *e.g.*, AC ¶ 208; Ex. KK.)  Plaintiffs even expressly concede in their Opposition that "Santos . . . reported directly to CEO Scharf" and "presented to the Board on diversity issues." (Opp. 29.) Plaintiffs point to no factual allegations in their pleadings supporting their assertion that Santos utterly failed to monitor the Guidelines or consciously ignored any red flags.

***Sanchez***.  Plaintiffs argue that Sanchez was responsible for the Company's diversity hiring practices, but say nothing about her actual monitoring efforts.  Again, Defendants have acknowledged that Sanchez was responsible for the Company's diversity hiring practices. (Off. Mot. 13.)  The fatal issue, as explained above, is that Plaintiffs do not even try to defend the substance of their oversight claims.  (*See supra* Section II.A.)  Plaintiffs' Opposition, just like their Amended Complaint, says nothing at all about Sanchez besides citing the names of her positions and her October 7, 2021 statements.  Plaintiffs do not plead any facts about her monitoring efforts, let alone facts indicating that she utterly failed to implement information systems regarding diversity hiring.

## C. Plaintiffs' Opposition Does Not Identify any Red Flags that the Officer Defendants Ignored.

Plaintiffs finally argue that, even putting aside the Officer Defendants' areas of responsibility, the Officer Defendants were nevertheless required under *Caremark* to report "credible information indicating that the corporation [wa]s violating the law" to the Board. (Opp. 29.)  As an initial matter, this *Caremark* argument is unprecedented.  *McDonald's I*, which only last year first recognized the possibility that *Caremark*'s oversight duty extended to corporate officers, hypothesized that, in exceptional circumstances,

-6-

SULLIVAN &
CROMWELL LLP

1  officers may have a freestanding duty to report red flags outside of their area of responsibility.  The Court

2  of Chancery stated, in full, that "officers generally only will be responsible for addressing or reporting red

3  flags within their areas of responsibility, although one can imagine possible exceptions . . . [i]f a red flag

4  is sufficiently prominent."  289 A.3d at 370.

5        Plaintiffs also do not identify any such "sufficiently prominent" red flag containing "credible

6  information" that would have alerted any of the Officer Defendants to violations of law regarding fair

7  lending or diversity hiring.   The most Plaintiffs muster is Bruno's September 7, 2021 email to

8  approximately 250 Wells Fargo employees, including Powell and Santos.  Tellingly, Plaintiffs continue

9  to ignore the Court of Chancery's factual determination that Bruno's email only "devoted two sentences

10  to [purported fake interviews]," out of nearly two dozen paragraphs, "and otherwise largely focused on

11  personal issues that Mr. Bruno had with his supervisor" that "one would not expect to warrant board

12  attention." (Ex. 7 at 34.)

13        Plaintiffs cite *McDonald's I* for the proposition that the Officer Defendants somehow have an

14  enhanced duty to spot and report red flags because they are "full-time employees."   (Opp. 29.)

15  *McDonald's I* holds no such thing.  That case says only that "[t]he Red-Flags Obligation simply recognizes

16  that the officers who are running the business on a full-time basis have a duty to address or report upward

17  regarding what they see."  *McDonald's I*, 289 A.3d at 362.  It does not say that officers act in bad faith

18  when they do not report to the company's board materials that would not "warrant board attention." (Ex. 7

19  at 34.)

20  **III.    THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO STATE SECTION 10(b)**
21  **        CLAIMS AGAINST THE OFFICER DEFENDANTS.**

22      **A.    Plaintiffs Fall Short of Demonstrating that the Officer Defendants Had Ultimate**
           **Authority over the Challenged Statements Made by Wells Fargo.**

23        As explained in the Officer Defendants' Motion (at 18-19), the Amended Complaint fails to plead

24  that the Officer Defendants had "ultimate authority" over any of challenged statements from Wells Fargo's

25  SEC filings or other public statements attributed to the Company.  Plaintiffs' only response is to cite to

26  *Stack* v. *Lobo*, 903 F. Supp. 1361 (N.D. Cal. 1995), in an attempt to invoke the "group pleading doctrine,"

27  a now-obsolete doctrine that provided that statements attributed to a public company could be "presumed

28

SULLIVAN &
CROMWELL LLP

to be the collective actions of [the company's] officers . . . directly involved in" corporate affairs.  *Id.* at 1376.  *Stack* predated by several months the enactment of the Private Securities Litigation Reform Act and by several years the Supreme Court's decision in *Tellabs, Inc.* v. *Makor Issues & Rights*, 551 U.S. 308 (2007), and "the majority of district courts within the [Ninth] Circuit to confront the group pleading doctrine post-*Tellabs* have decided that the doctrine did not survive."  *Petrie* v. *Elec. Game Card, Inc.*, 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1154 (C.D. Cal. 2007) ("numerous district courts within this circuit" have "conclude[d] that the group pleading doctrine can no longer be used in pleading cases under the PSLRA").

But even if the group pleading doctrine had survived the PSLRA and *Tellabs* (it did not), it is not enough under that doctrine for Plaintiffs simply to plead, without more, that the Officer Defendants "were among the senior management" of the Company.  (AC ¶ 444.)  Plaintiffs would still be required under the doctrine to "state, with particularity, facts indicating that the individual defendant was directly involved in the preparation of the allegedly misleading statements."  *Abdo* v. *Fitzsimmons*, 2017 WL 6994539, at *8 (N.D. Cal. Nov. 3, 2017).  The Amended Complaint is wholly devoid of any such allegations as to the Officer Defendants.  There are no "specific facts" that the Officer Defendants were "provided with ultimate authority over various SEC filings, news releases, and other public statements" of Wells Fargo, or that the Officer Defendants "were even provided with all of these documents before their issuance." *Hefler* v. *Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018).  And Plaintiffs' assertion that Wells Fargo's *directors* "were members of committees that were expressly charged with overseeing risk to Wells Fargo" (Opp. 35) is irrelevant to Plaintiffs' claims against the Officer Defendants.  As explained in the Officer Defendants' Motion, the Officer Defendants cannot be liable for challenged statements they did not "make."  (Off. Mot. 25.)

**B.      Plaintiffs Fail To Explain How any of the Challenged Statements Were False or Misleading.**

Plaintiffs abandon any claims that the handful of challenged statements relating to Wells Fargo's mortgage lending practices are false or misleading, since the Opposition ignores them.  (*See* Opp. 30-32.) For the reasons explained in the Officer Defendants' Motion (at 20), Plaintiffs' own allegations demonstrate that these statements were not false.

-8-

SULLIVAN &
CROMWELL LLP

As to the remaining challenged statements about hiring practices, Plaintiffs still fail to demonstrate why any of those statements — which amount to general descriptions of the Guidelines or aspirational statements expressing Wells Fargo's commitment to diversity — were misleading or are actionable under Section 10(b).  (*See* Off. Mot. 19-20; *see also* 23.1 Reply 14-15.)  Plaintiffs insist that "the Complaint alleges the sham interviews were widespread" (Opp. 32), but they recycle the very same allegations that this Court has already determined in the related securities action demonstrate nothing more than "isolated incidents" of noncompliance with the Guidelines.  *SEB Inv. Mgmt. AB* v. *Wells Fargo & Co.*, 2023 WL 11691540, at *6 (N.D. Cal. Aug. 18, 2023).  Nor do Plaintiffs bother to address how Santos's statement that Wells Fargo "could not corroborate . . . as factual" the allegations in *The New York Times* could be misleading, since the Amended Complaint pleads nothing to suggest that an investigation did not take place and come to that conclusion.  (*See* Off. Mot. 19.)  Plaintiffs have thus failed to plead that any of these statements is false.

### C.    Plaintiffs Have No Response to the Absence of Scienter Allegations as to the Officer Defendants.

Finally, even if Plaintiffs could show that each of the challenged statements was attributable to the Officer Defendants and was materially false or misleading (and they have not done either), the Amended Complaint still utterly fails to "state with particularity facts giving rise to a strong inference that the [Officer Defendants] acted with" the requisite scienter.  15 U.S.C. § 78u–4(b)(2).  To satisfy this requirement as to any Officer Defendant, Plaintiffs must plead *particularized* facts showing that that Officer Defendant "made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  As set forth in the Officer Defendants' Motion (at 20-22), the Amended Complaint entirely lacks *any* allegations (much less particularized ones) supporting an inference that any of the Officer Defendants was even aware of purportedly widespread fake interviews across the Company or the operations of the Company's mortgage underwriting models.

Plaintiffs' only response is to suggest without elaborating that the Amended Complaint pleads scienter because the Officer Defendants allegedly "were responsible for managing the day-to-day operations" and "core aspects" of the Company, including "hiring." (Opp. 33.)  This argument appears to

-9-

SULLIVAN &
CROMWELL LLP

1  be an attempt by Plaintiffs to invoke the "core operations" theory of scienter, which presumes that

2  "corporate officers have knowledge of the critical core operation of their companies." *Police Ret. Sys. of*

3  *St. Louis* v. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).  But pleading scienter through

4  the core operations theory is "not easy," and "[a] plaintiff must produce either specific admissions by one

5  or more corporate executives of detailed involvement in the minutia [*sic*] of a company's operations . . .

6  or witness accounts demonstrating that executives had actual involvement in creating" the challenged

7  statements.  *Id.*  Plaintiffs come nowhere close to satisfying this demanding requirement.  There are no

8  particularized allegations of the Officer Defendants' "admitt[ing] any involvement with the minutiae of"

9  the Guidelines or having "actual access to the disputed information."  *Prodanova* v. *H.C. Wainwright &*

10  *Co., LLC*, 993 F.3d 1097, 1111-12 (9th Cir. 2021).  Plaintiffs point to a purported "'trove' of relevant

11  metrics" (Opp. 33), but plead nothing to suggest that this "amounted to a database of sham interviews."

12  *SEB*, 2023 WL 11691540, at *8.  And there are no particularized allegations, let alone "extensive facts,"

13  demonstrating that the Guidelines were seen as "critical to the company's success and growth prospects"

14  such that it would have been "absurd to suggest that management was without knowledge of the matter."

15  *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1100-01 (N.D. Cal. 2017).  At

16  best, Plaintiffs offer generalized allegations of "knowledge," which are not enough.  *Intuitive Surgical*,

17  759 F.3d at 1062.

18  **IV.**   **THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO STATE SECTION 20(a)
19            CLAIMS AGAINST THE OFFICER DEFENDANTS.**

20        As Plaintiffs concede, they must adequately allege a primary violation of the securities laws to

21  plead Section 20(a) claims. (Opp. 35.)  Plaintiffs have not done so, and their Section 20(a) claims fail for

22  this reason alone.  But even if Plaintiffs had adequately alleged any primary violations, they fail to plead

23  that any of Powell, Santomassimo, Sanchez, Santos, or Weiss "exercised actual power or control over the

24  primary violator."  *SEB*, 2023 WL 11691540, at *9.  As explained in the Officer Defendants' Motion

25  (at 23), Plaintiffs' three-paragraph control person section does not even identify any Officer Defendant by

26  name, let alone explain how any of them would have had control over any of the particular challenged

27  statements that *they themselves did not make*.

28        Plaintiffs rely on *In re Maxim Integrated Products, Inc. Securities Litigation*, 639 F. Supp. 3d 1038

-10-

(N.D. Cal. 2009), to argue that they need only plead conclusory allegations that the Officer Defendants "possess[] . . . the power to direct or cause the direction of the management" of Wells Fargo.  (Opp. 35 (quoting *In re Maxim*, 639 F. Supp. 2d at 1050).)  Plaintiffs misrepresent this case.  There, in finding that the plaintiffs adequately pleaded control, the *Maxim* court credited the detailed allegations in the complaint that the defendant corporate treasurer — the alleged control person — was the "architect" of the company's stock options program, helped draft a letter evidencing knowledge of accounting improprieties for backdating stock options, and otherwise "had intimate knowledge" of the options backdating scheme at issue.  639 F. Supp. 2d at 1050.  The Amended Complaint pleads no such detailed allegations as to any of the Officer Defendants here.[3]  Instead, the allegations in the Amended Complaint that the Opposition cites to as Plaintiffs' purported "prima facie case" of control are either irrelevant or conclusory, lacking any detail as to *how* the Officer Defendants had "specific control over the preparation and release of" the statements at issue.  *Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057, 1065-67 & n.13 (9th Cir. 2000).  (*See, e.g.*, AC ¶¶ 174 (alleging that Powell and Santos were recipients of email); 297-99 (alleging that Santomassimo, Powell, and Weiss were evaluated on "progress" in diversity generally).)  And Plaintiffs' conclusory assertion that the Officer Defendants are control persons because they "were actively involved in the day-to-day affairs of Wells Fargo and directly involved in the dissemination of misstatements through their roles as executives" (Opp. 36) are the kind of barebones allegations that are legally insufficient.  (Off. Mot. 23); *see also Purple Mountain Tr.* v. *Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020) ("barebones allegations" that defendants "had the power and ability to control the actions of Wells Fargo and its employees" "[b]y virtue of their positions and their power to control public statements about Wells Fargo" were insufficient to state claim under Section 20(a)).  Plaintiffs, once again, have no response.[4]

---

[3]    Likewise, Plaintiffs appear to suggest that they are permitted to plead control under the lower Rule 8 pleading standard (Opp. 35), but as this Court explained in the related securities action, "[w]here a plaintiff asserts a Section 20(a) claim based on an underlying violation of Section 10(b), the pleading requirements for both violations are the same."  *SEB*, 2023 WL 11691540, at *9 (quoting *Kyung Cho* v. *UCBH Holdings, Inc.*, 890 F. Supp. 3d 1190, 1205 (N.D. Cal. 2012)).

[4]    Plaintiffs' Section 20(a) claim further fails because, in a derivative action, where the plaintiff is trying to assert claims on behalf of the corporation, "the corporation cannot be a primary violator for control person purposes."  *In re Maxim Integrated Prods., Inc., Derivative Litig.*, 574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008).

SULLIVAN &
CROMWELL LLP

**V.      THE OPPOSITION CONFIRMS PLAINTIFFS' FAILURE TO STATE A SECTION 20A CLAIM AGAINST SANTOS.**

Because Plaintiffs have failed to plead any primary violation of the securities laws as to Santos, their Section 20A claim against him fails for this reason alone.  (Off. Mot. 24.)

Separately, Plaintiffs also misapprehend the standard for contemporaneity in their Opposition. Plaintiffs insist that "it is sufficient to allege that the company was consistently repurchasing a large number of shares during the defendant's selling period to show the trading activity occurred contemporaneously."  (Opp. 36.)  The point is not that Wells Fargo was "engaged in a share repurchase program" when Santos allegedly sold his shares (*id.* at 37), but rather that "shares purchased below the defendant's sale price" — as alleged here — "cannot satisfy the contemporaneity requirement."  *SEB Inv. Mgmt. AB* v. *Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1136 (N.D. Cal. 2020); *see also Orbis Glob. Equity Fund Ltd.* v. *NortonLifelock Inc.*, 2023 WL 1800963, at *20 (D. Ariz. Feb. 7, 2023) ("Plaintiffs must therefore show that they purchased [the relevant] shares after, but still contemporaneously with, Defendants' sales of [those] shares, and that they purchased these shares *at higher prices* than the prices at which Defendants sold them." (emphasis added)).  Indeed, in the two cases relied upon by Plaintiffs, defendants were alleged to have sold shares at or above the price at which they were repurchased by the company during the relevant period.  (*See, e.g.*, Dkt. No. 41 (Complaint) ¶ 537, *In re Countrywide Fin. Corp. Derivative Litig.*, No. 07-cv-06923-MRP-MAN (C.D. Cal. Feb. 15, 2008) (alleging that named defendants sold shares at a higher price than the average price at which the company repurchased shares during the same months); Dkt. No. 83 (Complaint) ¶¶ 316, 383, 386, *In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 3:16-cv-05541-JST (N.D. Cal. Feb. 24, 2017) (same).)  Similar allegations as to Santos and whether he sold shares at or above the price at which Wells Fargo allegedly repurchased them are entirely absent from the Amended Complaint.  (*See* Off. Mot. 24-25.)  Plaintiffs try to sidestep this deficiency by claiming that the standard outlined in *Align Tech* and similar cases "does not apply to derivative cases" (Opp. 36), but make no effort to explain why the requirements for pleading a Section 20A claim would operate any differently in the derivative context.

-12-

SULLIVAN & CROMWELL LLP

1

**CONCLUSION**

2      For the foregoing reasons, and those set forth in the Motion, the Court should grant the

3  Officer Defendants' Motion with prejudice.

4  DATED:  July 2, 2024                              Respectfully submitted,

5                                                     */s/ Brendan P. Cullen*
                                                     Brendan P. Cullen (SBN 194057)
6                                                    (cullenb@sullcrom.com)
                                                     Sverker K. Hogberg (SBN 244640)
7                                                    (hogbergs@sullcrom.com)
                                                     SULLIVAN & CROMWELL LLP
8                                                    550 Hamilton Avenue
                                                     Palo Alto, California  94301
9                                                    Telephone:  (650) 461-5600

10

11                                                   Christopher M. Viapiano (*pro hac vice*)
                                                     (viapianoc@sullcrom.com)
                                                     SULLIVAN & CROMWELL LLP
12                                                   1700 New York Avenue N.W., Suite 700
                                                     Washington, D.C. 20006
13                                                   Telephone:  (202) 956-7500

14

15                                                   Leonid Traps (*pro hac vice*)
                                                     (trapsl@sullcrom.com)
                                                     SULLIVAN & CROMWELL LLP
16                                                   125 Broad Street
                                                     New York, New York  10004
17                                                   Telephone:  (212) 558-4000

18                                                   *Counsel for Defendants Scott Powell,*
                                                     *Michael Santomassimo, Carly Sanchez,*
19                                                   *Kleber Santos, and Jonathan Weiss*

20

21

22

23

24

25

26

27

28