Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Sverker K. Hogberg (SBN 244640)
(hogbergs@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California 94301
Telephone: (650) 461-5600

*Counsel for Defendants Scott Powell, Carly Sanchez, and Kleber Santos*

[*Additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY HIRING PRACTICES DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 3:22-cv-05173-TLT<br><br>**DEFENDANTS SCOTT POWELL, CARLY SANCHEZ, AND KLEBER SANTOS'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE ADEQUATELY TO PLEAD DEMAND FUTILITY AND FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing: January 14, 2025<br>Time: 2:00 p.m.<br>Courtroom 9, 19th Floor<br>The Honorable Trina L. Thompson |

# NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 14, 2025 at 2:00 p.m., or as soon thereafter as counsel may be heard in Courtroom 9 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Scott Powell, Carly Sanchez, and Kleber Santos will and hereby do move this Court to dismiss the claims asserted against them in the Second Amended Consolidated Stockholder Derivative Complaint (ECF No. 177) under Federal Rules of Civil Procedure 12(b)(6) and 23.1.  This Motion is based on this Notice, the supporting Memorandum of Law, the Declaration of Brendan P. Cullen and exhibit thereto (ECF No. 178-1), Wells Fargo's Request for Judicial Notice (ECF No. 178-2), the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing or thereafter.

DATED:  October 17, 2024

Respectfully submitted,

*/s/ Brendan P. Cullen*

Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Sverker K. Hogberg (SBN 244640)
(hogbergs@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California  94301
Telephone:  (650) 461-5600

Christopher M. Viapiano (*pro hac vice*)
(viapianoc@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue N.W., Suite 700
Washington, D.C.  20006
Telephone:  (202) 956-7500

Leonid Traps (*pro hac vice*)
(trapsl@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

*Counsel for Defendants Scott Powell, Carly Sanchez, and Kleber Santos*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

ISSUES TO BE DECIDED .....................................................................................................2

BACKGROUND ......................................................................................................................3

    A.    The Allegations in the First Amended Complaint ............................................3

    B.    The Court's Order on Defendants' Prior Motions To Dismiss..........................4

    C.    The Allegations in the Second Amended Complaint........................................6

ARGUMENT ............................................................................................................................6

I.    Plaintiffs Still Fail to Plead Demand Futility as to the Officer Defendants......................6

II.    Plaintiffs' Securities Claims Against the Officer Defendants Should Be Dismissed. .....8

CONCLUSION .......................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo* v. *Fitzsimmons*,
   2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ................................................................9

*Beam* v. *Stewart*,
   833 A.2d 961 (Del. Ch. 2003) ......................................................................................7

*Buban* v. *O'Brien*,
   1994 WL 324093 (N.D. Cal. June 22, 1994) ..........................................................12, 13

*In re Finisar Corp. Derivative Litig.*,
   2012 WL 2873844 (N.D. Cal. July 12, 2012) ............................................................11

*Hefler* v. *Wells Fargo & Co.*,
   2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) .............................................................9

*Howard* v. *Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ....................................................................................11

*Janus Cap. Grp., Inc.* v. *First Derivative Traders*,
   564 U.S. 135 (2011) .....................................................................................................9

*Leventhal* v. *Chegg, Inc.*,
   2024 WL 924484 (N.D. Cal. Mar. 4, 2024) ...............................................................10

*In re Maxim Integrated Prods., Inc. Derivative Litig.*,
   574 F. Supp. 2d 1046 (N.D. Cal. 2008) .....................................................................11

*Murphy* v. *Precision Castparts Corp.*,
   2020 WL 4040827 (D. Or. July 17, 2020) .................................................................11

*Or. Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) .......................................................................................8

*Orbis Glob. Equity Fund Ltd.* v. *NortonLifelock Inc.*,
   2023 WL 1800963 (D. Ariz. Feb. 7, 2023) ................................................................12

*Purple Mountain Tr.* v. *Wells Fargo & Co.*,
   432 F. Supp. 3d 1095 (N.D. Cal. 2020) .....................................................................11

*Rosenbloom* v. *Pyott*,
   765 F.3d 1137 (9th Cir. 2014) .....................................................................................6

*SEB Inv. Mgmt. AB* v. *Align Tech., Inc.*,
   485 F. Supp. 3d 1113 (N.D. Cal. 2020) ................................................................12, 13

*SEB Inv. Mgmt. AB* v. *Wells Fargo & Co.*,
  2024 WL 3579322 (N.D. Cal. July 29, 2024)..................................................................5

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State
  Pension Fund* v. *Zuckerberg*,
  262 A.3d 1034 (Del. 2021) ...............................................................................................6, 7

*In re Verisign, Inc. Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................................................11

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* .............................................................2

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a) *et seq.* ....................2, 8, 10

Securities Exchange Act Section 10(b), 15 U.S.C. § 78j(b) ................................................... *passim*

Securities Exchange Act Section 14(a), 15 U.S.C. § 78n(a)..........................................................4, 5

Securities Exchange Act Section 20(a), 15 U.S.C. § 78t(a) ................................................... *passim*

Securities Exchange Act Section 20A, 15 U.S.C. § 78t-1 ...................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b)................................................................................................8

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................8, 13

Federal Rule of Civil Procedure 23.1 ...........................................................................................6, 13

Securities and Exchange Commission Rule 10b-5 ..........................................................................2

**PRELIMINARY STATEMENT**

On September 20, 2024, this Court dismissed Plaintiffs' claims against each Wells Fargo officer named as a defendant on the ground that Plaintiffs had not adequately alleged that demand on a majority of the Board to bring claims against the officers would be futile.  The Court nevertheless gave Plaintiffs "leave to amend to include allegations — such as congruency of facts — that plead demand futility" for those claims.  (ECF No. 176 ("Order") at 48.)  Plaintiffs filed a second amended complaint on October 3, 2024.  (ECF No. 177 ("Second Amended Complaint" or "SAC").)  The new complaint drops most of the claims against the officers, including dismissing two of them (Michael Santomassimo and Jonathan Weiss) entirely, and now only asserts claims against Scott Powell, Carly Sanchez, and Kleber Santos (the "Officer Defendants") for allegedly violating federal securities laws by making false or misleading statements relating to Wells Fargo's hiring practices.  But despite the Court's conclusion that the prior complaint "does not contain any allegations that pre-suit demand on the Board would have been futile with respect to any claims against the Officer Defendants" (Order at 48), the second amended complaint *does not include any new allegations*.  Plaintiffs' sole change is to instead add a four-paragraph "sub-section in the Demand Futility section" containing *arguments* that the existing allegations — the same allegations that the Court has already found to be insufficient — adequately allege demand futility.  (*See* SAC § I, ¶¶ 420-23.)  The point of leave to amend is to provide a plaintiff with a chance to supplement their *factual* allegations.  Plaintiffs did not do so.  Plaintiffs' claims against the remaining Officer Defendants should be dismissed, this time with prejudice.

*First*, Plaintiffs concede demand futility as to the remaining claims against the Officer Defendants by failing to include any new allegations to address the deficiencies identified by the Court.  Plaintiffs simply point to existing allegations and insist, despite the Court's conclusion otherwise, that those allegations should be enough.  As the Court has already determined, those allegations "are not [a] 'near-total overlap'" with the allegations against the Director Defendants.  (Order at 48.)  Plaintiffs' failure to "include allegations" demonstrating otherwise, as the Court gave them the chance to do, is fatal to their remaining claims.

*Second*, the securities claims against the three remaining Officer Defendants still suffer from the numerous deficiencies identified in the Officer Defendants' prior motion.  Plaintiffs assert a Section 10(b)

claim against Scott Powell, but fail to identify a single statement that Powell himself actually made. Nor do Plaintiffs provide sufficient allegations to support the requisite compelling inference that Powell, who is not a defendant in the related securities action and who is not implicated in most of the allegations that Plaintiffs use to support their claim of scienter as to the Director Defendants or Sanchez and Santos, acted with intent to defraud. Plaintiffs also reassert Section 20(a) claims against the three Officer Defendants, claiming that they each "had the power and authority to direct the management and activities of the Company" and "control[led] . . . the content of the public statements made by Wells Fargo." (SAC ¶ 445.) But those claims continue to suffer from the fundamental deficiency that a derivative Section 20(a) claim, purportedly brought on Wells Fargo's *behalf*, cannot be based on an allegedly false or misleading statement *by Wells Fargo*. And even if it could, Plaintiffs still fail to allege specific facts demonstrating that any of the Officer Defendants exercised any actual control over the challenged statements identified in the complaint. Lastly, Plaintiffs reassert a claim against Santos for alleged insider trading under Section 20A. But Plaintiffs' unchanged allegations are still deficient because they do not show that Santos made "contemporaneous" trades with Wells Fargo within the meaning of Section 20A.

## ISSUES TO BE DECIDED

1. Should Plaintiffs be permitted to pursue Wells Fargo's claims against the Officer Defendants where the Court previously dismissed those claims for failure to adequately plead demand futility and the Second Amended Complaint adds no new allegations to support Plaintiffs' renewed assertion that demand on a majority of Wells Fargo's Board of Directors as to the claims against the officer Defendants would have been futile?

2. Should Plaintiffs' claim against Defendant Powell under Section 10(b) of the Securities Exchange Act and Rule 10b-5 be dismissed where the Second Amended Complaint fails to allege particularized facts demonstrating that he made any materially false or misleading statement with the requisite intent to defraud, as required by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a) *et seq.*?

3. Should Plaintiffs' claims under Section 20(a) of the Securities Exchange Act against the Officer Defendants be dismissed where the claims are based on purported Exchange Act violations by

Wells Fargo, and where the Second Amended Complaint fails to adequately allege particularized facts showing that the Officer Defendants exercised control over any of the challenged statements?

4. Should Plaintiffs' claim under Section 20A of the Securities Exchange Act against Santos be dismissed where the Second Amended Complaint fails to adequately allege particularized facts showing that Wells Fargo engaged in "contemporaneous" share repurchases at or above the price at which Santos allegedly sold his own shares?

## BACKGROUND[1]

### A. The Allegations in the First Amended Complaint

Plaintiffs filed the Consolidated Amended Stockholder Derivative Complaint (the "First Amended Complaint" or "FAC") on May 10, 2024, asserting derivative claims against current and former Wells Fargo directors and officers under Delaware common law and the federal securities laws. (*See* ECF No. 147.) The claims were based on two primary sets of allegations, concerning (i) Wells Fargo's diversity hiring practices and (ii) Wells Fargo's mortgage lending practices.

*Hiring Practices.* In March 2020, Wells Fargo announced that it was expanding a policy requiring that at least half of all candidates interviewed for certain positions be diverse. (FAC ¶ 8.) The policy — formally referred to as the Diversity Sourcing and Interview Team Guidelines ("Guidelines") — went into effect later that year, and required that, "for most U.S. roles with total direct compensation greater than $100,000," "[a]t least 50% of interview candidates must be diverse with respect to at least one diversity dimension." (*Id.* ¶ 222.) In May and June 2022, *The New York Times* published two articles recounting what the reporter described as instances of purported "sham" interviews of diverse candidates under the Guidelines. (*Id.* ¶¶ 26, 182, 190.) Wells Fargo explained that it investigated the hiring-practices allegations described in the articles and "could not corroborate them," but nevertheless announced a "pause" of the Guidelines so Company leaders could "have confidence that the guidelines live[d] up to their promise," and ensure that "hiring managers, senior leaders and recruiters fully underst[oo]d how the guidelines should be implemented." (*Id.* ¶¶ 191, 254.)

---

[1] The Officer Defendants provided a detailed background in their prior motion to dismiss. Accordingly, they do not repeat the entirety of that background here and focus instead on the specific allegations that are relevant to Plaintiffs' attempt to cure the pleading deficiencies in the prior complaint.

*Mortgage Lending Practices.* On March 11, 2022, *Bloomberg* published an article describing purported racial disparities in Wells Fargo's mortgage refinancing rates during 2020. According to the article, Wells Fargo approved 47% of mortgage refinancing applications submitted by Black homeowners, compared with 72% of applications by white homeowners. (*Id.* ¶ 16.) In the wake of the *Bloomberg* reporting, several mortgage borrowers filed putative class actions against Wells Fargo and its affiliates alleging racial discrimination in mortgage lending resulting in part from the Company's mortgage underwriting algorithm. (SAC ¶ 99 & n.47.)

*Derivative Claims in the First Amended Complaint.* Based on these allegations, Plaintiffs asserted derivative claims against 16 current and former Wells Fargo directors and five current and former senior executives:

- *Caremark* Hiring Practices Claims: Plaintiffs claimed that the directors and officers breached their fiduciary duties under Delaware law by failing to adequately oversee the Company's diversity hiring practices.

- *Caremark* Mortgage Lending Claims: Plaintiffs claimed that the directors and officers breached their fiduciary duties under Delaware law by failing to adequately oversee the Company's mortgage lending practices.

- Section 14(a) Claims: Plaintiffs claimed that the director defendants issued false or misleading proxy statements regarding the Company's hiring practices and commitment to diversity.

- Section 10(b) Claims: Plaintiffs claimed that the directors and officers made false or misleading statements about the Company's hiring and mortgage lending practices.

- Section 20(a) Claims: Plaintiffs claimed that the directors and officers are "controlling persons of [Wells Fargo]" under Section 20(a) of the Exchange Act and therefore should be liable for any violations of Section 10(b) by the Company.

- Section 20A Claim: Plaintiffs claimed that Defendant Santos is liable for allegedly engaging in contemporaneous insider trading while Wells Fargo was repurchasing its own shares.

B.    **The Court's Order on Defendants' Prior Motions To Dismiss**

On September 20, 2024, the Court issued an Order granting-in-part and denying-in-part Wells Fargo's and the Officer Defendants' motions to dismiss the First Amended Complaint. (ECF No. 176.) The bulk of the Order addresses Plaintiffs' claims against the Director Defendants.

First, the Court dismissed Plaintiffs' *Caremark* claims regarding the Company's hiring practices with prejudice, finding that Plaintiffs had failed adequately to plead demand futility. (*See id.* at 21, 31-32, 37.) The Court found that, as alleged, demand would have been futile as to Plaintiffs' *Caremark* "prong one" claims against the Director Defendants regarding Wells Fargo's mortgage lending practices. (*Id.* at 29.)

With regard to the securities claims, the Court dismissed the Section 14(a) claims against the Director Defendants with prejudice on the basis that these claims are exculpated by Wells Fargo's charter. (*Id.* at 37-38.) The Court found demand would have been futile as to the Section 10(b) claims against the Director Defendants with respect to 13 statements regarding the Company's hiring practices, relying heavily on the Court's previous opinion in a related securities action, *SEB Investment Management AB* v. *Wells Fargo & Co.*, 2024 WL 3579322 (N.D. Cal. July 29, 2024). (Order at 40-41, 45.) The Court also found that demand would have been futile with respect to the Section 20(a) claims against the Director Defendants on the basis that Plaintiffs had adequately pleaded a predicate Section 10(b) violation. (*Id.* at 46.) The Court dismissed Plaintiffs' Section 10(b) claims with respect to statements about Wells Fargo's mortgage lending practices. (*Id.* at 43, 45.)

Lastly, the Court held that Plaintiffs had not adequately pleaded demand futility with respect to *any* of the claims brought against the Officer Defendants. (*Id.* at 46-48.) With respect to the *Caremark* claims, the Court recognized that, under Delaware law, the Officer Defendants' oversight of the Company's hiring and mortgage lending practices "will implicate a different set of facts than a *Caremark* claim against the Director Defendants." (*Id.* at 48.) Likewise, the Court explained that it was "unclear from the pleadings" whether Plaintiffs' factual allegations against the Director Defendants were "congruous" with the allegations underlying Plaintiffs' Section 10(b) and Section 20(a) claims against the Officer Defendants, and that Plaintiffs' allegations were not "congruous" for Plaintiffs' Section 20A claim against Santos. (*Id.* at 48.) Ultimately, the Court determined that Plaintiffs had not pleaded "any allegations that pre-suit demand on the Board would have been futile with respect to any claims against the Officer Defendants." (*Id.*) The Court granted Plaintiffs leave to amend to plead demand futility allegations for their claims against the Officer Defendants.

### C. The Allegations in the Second Amended Complaint

Plaintiffs filed the Second Amended Consolidated Stockholder Derivative Complaint (the "Second Amended Complaint") on October 3, 2024. (ECF No. 177.) Plaintiffs' Second Amended Complaint is largely a carbon copy of the prior complaint. The new complaint dismisses two of the previous Officer Defendants (Santomassimo and Weiss) altogether, and abandons all *Caremark* claims against the remaining three Officer Defendants (Powell, Sanchez, and Santos).[2] All that is left are Plaintiffs' claims that Powell, Sanchez, and Santos violated the securities laws by making allegedly false or misleading statements relating to Wells Fargo's hiring practices, and that Santos engaged in contemporaneous insider trading. Plaintiffs' only effort to plead demand futility with regard to these claims is to assert in a conclusory fashion, without adding any new factual allegations, that a majority of the Board "had control over or approved" "false statements that implicate or were made by the Officer Defendants," and that the allegedly false or misleading statements attributed to the Officer Defendants "implicate[] and [are] intertwined with" the allegations concerning the Director Defendants. (SAC ¶¶ 421-22.)

## ARGUMENT

### I. PLAINTIFFS STILL FAIL TO PLEAD DEMAND FUTILITY AS TO THE OFFICER DEFENDANTS.

Plaintiffs barely even attempt to rectify their failure to plead demand futility as to any of the remaining claims against the Officer Defendants. Federal Rule of Civil Procedure 23.1(b)(3) requires that a shareholder-derivative complaint "state with particularity" any "effort by the plaintiff to obtain the desired action from the directors," or, if the shareholder failed to make any such effort, "the reasons for not obtaining the action or not making the effort" — in other words, why making such a demand would have been "futile." Fed. R. Civ. P. 23.1(b)(3); *Rosenbloom* v. *Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014). The "purpose of the demand-futility analysis is to assess whether the board should be deprived of its decision-making authority because there is reason to doubt that the directors would be able to bring their

---

[2] Although Plaintiffs' *Caremark* claim (Count I) is styled against "the Individual Defendants" (*see* SAC at p. 155), the Second Amended Complaint adds no new demand futility allegations with respect to the Officer Defendants as to these claims, and elsewhere asserts that the Director Defendants "cannot impartially consider a demand to investigate the securities claims asserted against the Officer Defendants" without addressing the *Caremark* claims at all. (*Id.* ¶ 423.)

impartial business judgment to bear on a litigation demand." *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund* v. *Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021). Crucially, the "[d]emand futility analysis is conducted on a claim-by-claim basis." *Beam* v. *Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003).

In its Order dismissing Plaintiffs' claims against the Officer Defendants, the Court expressly "[did] *not* find that Plaintiffs have adequately alleged demand futility . . . as to the claims asserted against the Officer Defendants." (Order at 48 (emphasis added).) The Court nevertheless gave Plaintiffs "leave to amend to include *allegations — such as congruency of facts —* that plead demand futility" for those claims. (*Id.* (emphasis added)). Despite this clear instruction, Plaintiffs' Second Amended Complaint offers no new factual allegations. Instead, Plaintiffs merely added a four-paragraph subsection within the Demand Futility section, which rehashes the same arguments based on the same allegations that the Court has already deemed insufficient. (SAC ¶¶ 421-23.) This failure to add any new factual content essentially concedes that demand is not futile. For this reason alone, Plaintiffs' claims against the Officer Defendants should be dismissed again under the Court's prior ruling.

In any event, the *arguments* that Plaintiffs make in their new sub-section are ineffective. Plaintiffs' sole remaining claims against the Officers Defendants are based on five alleged misstatements that Plaintiffs attribute to the Officer Defendants. (*See* SAC ¶ 421 ("Defendant Powell signed a letter that was included in Wells Fargo's 2020 Social Impact and Sustainability Highlights, which included false statements"); *id.* ("Defendant Sanchez gave an October 7, 2021 interview . . . which included false statements"); *id.* ("Defendant Santos provided *Business Insider* with false statements"); *id.* ("Defendant Santos made additional false statements . . . in the 2022 DE&I Report and on June 3, 2022 in a *Business Insider* article").) Although the Court previously concluded that a majority of the Board faces a substantial likelihood of liability for certain statements that allegedly were made by the Director Defendants (Order at 38-45), *not a single one* of those statements is the same as any of the statements that Plaintiffs attribute to Santos or Sanchez, and Plaintiffs do not specifically attribute any of the statements to Powell at all. Thus, a majority of the Board does not face a substantial likelihood of liability for those statements. *See City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1070 (N.D. Cal. 2012) ("A

defendant can be held liable under § 10(b) for a false or misleading statement only if the defendant 'made' the statement.").

In sum, there is no overlap between the alleged misstatements alleged to have been made by the Officer Defendants and any misstatements or other misconduct attributed to the Board, so there is no "congruency of facts" that would excuse making a demand on the Board. (Order at 48.) The alleged misstatements made by the Officer Defendants are not the same statements for which the Court found that a majority of the Board could face liability. Since the Board does not face a substantial likelihood of liability for the Officer Defendants' statements, a prelitigation demand on the Board would not have been futile.[3]

## II. PLAINTIFFS' SECURITIES CLAIMS AGAINST THE OFFICER DEFENDANTS SHOULD BE DISMISSED.

Even if Plaintiffs had not utterly failed to allege any new facts in support of demand futility as to the remaining claims against the Officer Defendants, several of those claims should still be dismissed for failure to state a claim under Rule 12(b)(6). As to their Section 10(b) claims, Plaintiffs still fail to allege that Powell was the maker of any of the challenged statements or that he acted with the requisite scienter.[4] And Plaintiffs still fail to state any claims under Section 20(a) against the Officer Defendants or under Section 20A against Santos.

***Section 10(b).*** The Second Amended Complaint still falls short in pleading any Section 10(b) claim against Powell under the "higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *Or. Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). Plaintiffs' generalized allegation that Powell was "among

---

[3] Plaintiffs' new arguments in the sub-section on demand futility also say nothing at all about the Board's ability to independently assess *Caremark* claims for breach of fiduciary duty against the Officer Defendants. Nor do Plaintiffs specifically address how demand would be futile on the Board as to the Section 20A claim against Santos, beyond lumping that claim in with the other securities claims. (SAC ¶ 423.) Thus, to the extent Plaintiffs are still attempting to assert such claims against the Officer Defendants, Plaintiffs effectively concede demand futility as to those other claims as well.

[4] The Officer Defendants maintain that the Second Amended Complaint also does not adequately allege any primary violation of the securities laws by Defendants Santos or Sanchez. But the Officer Defendants recognize that the Court has already concluded that Plaintiffs adequately pleaded that Defendants Santos and Sanchez made false or misleading statements and acted with scienter. (*See* Order at 40, 45.) The Officer Defendants accordingly do not reargue those issues here, and preserve the right to raise these arguments in subsequent proceedings as necessary.

the senior management" of the Company (SAC ¶ 440) is insufficient to plead that Powell made any of the challenged statements regarding Wells Fargo's hiring practices. And Plaintiffs' recycled scienter allegations fail to plead how Powell could have acted intentionally or with deliberate recklessness, even assuming he "made" any of the challenged statements in the first place.

*First*, "[a] defendant can be held liable under § 10(b) for a false or misleading statement only if the defendant 'made' the statement." *City of Royal Oak Ret. Sys.*, 880 F. Supp. 2d at 1070. And a defendant is only the "maker" of a statement when he or she has "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc.* v. *First Derivative Traders*, 564 U.S. 135, 142 (2011). None of the challenged statements in the Second Amended Complaint are attributed to Powell, and Plaintiffs do not plead "specific facts to show [Powell's] ultimate authority over each of the alleged misstatements in Wells Fargo's releases and SEC filings." *Hefler* v. *Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018). The *only* gesture Plaintiffs make toward this threshold pleading requirement as to Powell is to allege, for the first time, that Powell "signed a letter that was included in Wells Fargo's 2020 Social Impact and Sustainability Highlights, which included false statements." (SAC ¶ 421.) A cursory review of this document illustrates why this allegation is worded in such a deliberately strained way: Powell's letter relates only to Wells Fargo's effort to respond to the pandemic and participation in the Paycheck Protection Program, and it prefaces an *entirely different section* of this report that does not include any of the challenged statements and indeed makes no mention of Wells Fargo's diversity hiring practices at all. (*See* Ex. 1 at 4-12.) Otherwise, the Second Amended Complaint is devoid of particularized facts "indicating that [Powell] was directly involved in the preparation of the allegedly misleading statements," *Abdo* v. *Fitzsimmons*, 2017 WL 6994539, at *8 (N.D. Cal. Nov. 3, 2017), or "[was] even provided with all of these documents before their issuance." *Hefler*, 2018 WL 1070116, at *9. Powell is not liable under Section 10(b) for statements he did not "make."[5]

---

[5] To be clear, the Second Amended Complaint does not allege that Santos or Sanchez "made" or had "ultimate authority" over a significant majority of the statements attributed to Wells Fargo, either. The only statements "made" by Santos and Sanchez that could support a Section 10(b) claim against them are: (i) statements by Santos to *Business Insider* (SAC ¶¶ 252-54, 257-59); (ii) statements by Santos in Wells Fargo's 2022 DE&I Report (*id.* ¶¶ 255-56); and (iii) Sanchez's statement during an October 7, 2021 virtual interview with the Institute of Corporate Productivity (*id.* ¶¶ 237-39).

OFFICER DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
LEAD CASE NO. 3:22-cv-05173-TLT

SULLIVAN & CROMWELL LLP

*Second*, even assuming that Powell "made" any of the challenged statements, Plaintiffs have not adequately alleged the necessary "strong inference" of scienter. This Court has elsewhere held, both in this action and the securities action, that when "viewing the allegations holistically," a plausible inference of scienter has been raised against the Director Defendants and against Santos and Sanchez. (*See, e.g.*, Order at 45.) The Court has made no such holding as to Powell, and indeed, the Second Amended Complaint's specific allegations about Powell fall short under the required holistic analysis. *See Leventhal* v. *Chegg, Inc.*, 2024 WL 924484, at *3 (N.D. Cal. Mar. 4, 2024) (if none of plaintiff's allegations are, alone, "sufficient to give rise to a strong inference of scienter," the court "conducts a 'holistic' review to determine whether the allegations combine to give rise to a strong inference of scienter") (citation omitted). Plaintiffs plead no particularized facts that Powell made any public statements about the Company's diversity hiring initiatives, that he received Board-level reporting, or that he was aware of the allegation that Philip Miller was subjected to a fake interview. (SAC ¶¶ 265-67.) Plaintiffs point to a statement from Scharf that Powell was involved in the Company's efforts to comply with regulatory consent orders (*id.* ¶ 268), but do not allege that those efforts have anything to do with Wells Fargo's diversity hiring practices. Plaintiffs' scienter allegations, regardless of their sufficiency against any other Defendant, are simply insufficient against Powell under the PSLRA's demanding pleading standard, and the Second Amended Complaint adds nothing new.

**Section 20(a).** The Second Amended Complaint asserts that the Officer Defendants, "[b]y reason of their positions of control and authority as officers . . . of Wells Fargo," "were able to and did control, directly and indirectly, the content of the public statements made by Wells Fargo." (SAC ¶ 445.) Under Section 20(a), "a defendant employee of a corporation who has violated the securities laws will be jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates 'a primary violation of federal securities law' and that 'the defendant exercised actual power or control over the primary violator.'" *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Plaintiffs thus claim that each Officer Defendant is liable for each challenged statement, even if she or he did not make it, because each Officer Defendant purportedly had control over those responsible for the challenged statements publicly attributed to Wells Fargo. But Plaintiffs once again fail to address a fatal deficiency in their Section 20(a) control-person claims against the Officer Defendants.

Plaintiffs' Section 20(a) claims fail for the simple reason that, in a derivative action where a plaintiff purports to assert claims on behalf of a corporation, "the corporation cannot be a primary violator for control person purposes." *In re Maxim Integrated Prods., Inc., Derivative Litig.*, 574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008). This is well settled, because "it is logically impossible for a corporation on whose behalf a derivative action is brought to also be a primary violator." *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007); *see also In re Finisar Corp. Derivative Litig.*, 2012 WL 2873844, at *19 (N.D. Cal. July 12, 2012) ("However, plaintiffs' claim fails because it is premised on the allegation that the 'primary violator' over which defendants exercised control is [the corporation] itself."). Yet that is exactly what Plaintiffs allege here: that "Wells Fargo violated Section 10(b) of the Exchange act," and that "Defendants [were] culpable for the material misstatements and omissions made by Wells Fargo." (SAC ¶ 446.) Plaintiffs' Section 20(a) claims fail for this reason alone.

But even if Plaintiffs had not made clear that Wells Fargo itself is the only alleged primary violator for their Section 20(a) claims, these claims also fail for the additional reason that the Second Amended Complaint pleads nothing to explain how any of the Officer Defendants had "specific control over the preparation and release of" any of the challenged statements. *Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057, 1065-67 & n.13 (9th Cir. 2000). "Barebones" assertions that the Officer Defendants are control persons "[b]y reason of their positions of control and authority as officers" (SAC ¶ 445) are inadequate. *See Purple Mountain Tr.* v. *Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020). Nor do Plaintiffs explain how any of the Officer Defendants had control over each other's oral statements. *See Murphy* v. *Precision Castparts Corp.*, 2020 WL 4040827, at *25 (D. Or. July 17, 2020) (no control where "evidence d[id] not support a conclusion that [defendant] had any meaningful control over what words came out of [speaker's] mouth"). Plaintiffs' three-paragraph control person section reads like an afterthought and these claims should be dismissed.

**Section 20A.** Finally, the allegations underlying Plaintiffs' Section 20A claim against Santos remain unchanged, and this claim fails for the same reasons explained in the Officer Defendants' previous motion. (*See* ECF No. 153 at 29-31.) Plaintiffs assert that Santos is liable under Section 20A of the Exchange Act because he allegedly sold certain of his shares of Wells Fargo stock while the Company was engaged generally in share repurchases. (SAC ¶¶ 447-51.) To state a claim for "contemporaneous"

insider trading under Section 20A, Plaintiffs must plead (1) a predicate violation of the securities laws and (2) particularized facts showing that the trading activity of the defendant and the plaintiff (here, Wells Fargo) occurred "contemporaneously." *SEB Inv. Mgmt. AB* v. *Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1135 (N.D. Cal. 2020).[6]

But the Second Amended Complaint lacks particularized allegations that Wells Fargo, on whose behalf Plaintiffs purport to bring claims, made specific trades that were "contemporaneous" with Santos's alleged stock sales. The contemporaneity requirement ensures that "only private parties who have traded with someone who had an *unfair advantage* will be able to maintain insider trading claims." *SEB*, 485 F. Supp. 3d at 1135 (emphasis added). It functions as a "proxy for the traditional requirement of contractual privity between plaintiffs and defendants," and courts have explained that liability attaches under Section 20A only when "it appears the plaintiff might, in fact, have *traded with* the defendant." *Buban* v. *O'Brien*, 1994 WL 324093, at *3 (N.D. Cal. June 22, 1994) (emphasis added). For this reason, "courts have consistently held that shares purchased [by the plaintiff] below the defendant's sale price cannot satisfy the contemporaneity requirement, because it is impossible that those trades occurred with [the] defendant at an unfair advantage." *SEB*, 485 F. Supp. 3d at 1136; *see also Orbis Glob. Equity Fund Ltd.* v. *NortonLifelock Inc.*, 2023 WL 1800963, at *20 (D. Ariz. Feb. 7, 2023) ("Plaintiffs must therefore show that they purchased [the relevant] shares after, but still contemporaneously with, Defendants' sales of [those] shares, and that they purchased these shares *at higher prices* than the prices at which Defendants sold them.") (emphasis added).

Despite the Officer Defendants making this deficiency clear in their prior motion, Plaintiffs *still* fail to plead that Wells Fargo engaged in "contemporaneous" share repurchases at or above the price at which Santos allegedly sold his own shares. The Second Amended Complaint alleges, as did the First Amended Complaint, that on May 3, 2022, Santos "sold 22,700 shares of his Wells Fargo stock . . . for proceeds of approximately $1,008,788," resulting in an average sale price of $44.44 per share. (SAC ¶ 319.) By contrast, Plaintiffs allege that, in the same month, Wells Fargo repurchased shares at a

---

[6] As noted above (*supra* at n.4), the Officer Defendants maintain that the Second Amended Complaint does not adequately allege any primary violation of the securities laws by Santos.

"[w]eighted average price paid" of only $43.63 per share. (*Id.* ¶ 290.) Because Plaintiffs have only (and again) alleged that Wells Fargo repurchased shares at a *lower average price* than Santos's average sale price, "it is manifest that [Wells Fargo] could not have traded with [Santos]." *Buban*, 1994 WL 324093, at *3. The Second Amended Complaint does absolutely nothing to address this deficiency. Stock trades cannot be "contemporaneous" when a defendant sells shares for more than a plaintiff paid, so Plaintiffs' Section 20A claim against Santos necessarily fails. *SEB*, 485 F. Supp. 3d at 1136.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against the Officer Defendants in the Second Amended Complaint should be dismissed under Rules 12(b)(6) and 23.1, with prejudice.

DATED: October 17, 2024

Respectfully submitted,

 /s/ Brendan P. Cullen
Brendan P. Cullen (SBN 194057)
(cullenb@sullcrom.com)
Sverker K. Hogberg (SBN 244640)
(hogbergs@sullcrom.com)
SULLIVAN & CROMWELL LLP
550 Hamilton Avenue
Palo Alto, California  94301
Telephone:  (650) 461-5600

Christopher M. Viapiano (*pro hac vice*)
(viapianoc@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Avenue N.W., Suite 700
Washington, D.C.  20006
Telephone:  (202) 956-7500

Leonid Traps (*pro hac vice*)
(trapsl@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

*Counsel for Defendants Scott Powell,
Carly Sanchez, and Kleber Santos*