| | |
|---|---|
| IN RE WELLS FARGO & COMPANY HIRING PRACTICES DERIVATIVE LITIGATION | Case No. 22-cv-05173-TLT<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 178 |

On September 20, 2024, the Court issued an order on motions to dismiss. ECF 176. Among other findings, the Court found that the complaint did not "contain any allegations that pre-suit demand on the Board would have been futile with respect to any claims against" Defendants Scott Powell, Michael Santomassimo, Carly Sanchez, Kleber Santos, and Jonathan Weiss. *Id.* at 48. The Court granted Lead Plaintiffs City of Pontiac Reestablished General Employees' Retirement System ("Pontiac"), the City of Plantation Police Officers' Retirement Fund ("Plantation"), and Amy J. Cook (collectively, "Plaintiffs") leave to amend to include allegations that plead demand futility for claims asserted against these Defendants. *Id.*

On October 3, 2024, Plaintiffs filed a Second Amended Consolidated Stockholder Derivative Complaint ("SAC") addressing the deficiencies outlined by the Court's order. ECF 177. The SAC dropped claims against Defendants Michael Santomassimo and Jonathan Weiss.asserts claims, only asserting claims against Defendants Scott Powell, Carly Sanchez, and Kleber Santos. *Compare* ECF 177 *with* ECF 147. Subsequently, Defendants Scott Powell, Carly Sanchez, and Kleber Santos (collectively, "Officer Defendants") filed the instant motion to dismiss seeking to dismiss all claims alleged against the Officer Defendants. ECF 178. Officer Defendants contend that Plaintiffs fail to allege why demand on the board for claims alleged against Officer Defendants would have been futile. *Id.*

After review and consideration of the briefings, oral arguments, relevant legal authority, attachments and exhibits thereto, the Court **GRANTS** Officer Defendants' motion to dismiss for failure to plead demand futility with prejudice.

## I. BACKGROUND

### A. Procedural Background

On April 11, 2024, the Court issued an order consolidating four related cases with the lead case under the caption *In re Wells Fargo & Company Hiring Practices Derivative Litigation*. ECF 139. The Court granted-in-part and denied-in-part Defendants' motions to dismiss. ECF 176, at 2. The Court resolved the motions as to allegations against nominal Defendant Wells Fargo and Defendants Steven D. Black, Mark A. Chancy, Celeste A. Clark, Theodore F. Craver, Jr., Richard K. Davis, Wayne M. Hewett, Cecelia G. Morken, Maria R. Morris, Felicia F. Norwood, Richard B. Payne, Jr., Juan A. Pujadas, Ronald L. Sargent, and Suzanne M. Vautrinot, and CEO Charles W. Scharf (collectively, "Director Defendants"). *Id.* at 20–46. The Court provided Plaintiffs leave to amend to include allegations that plead demand futility for claims asserted against Defendants Scott Powell, Michael Santomassimo, Carly Sanchez, Kleber Santos, and Jonathan Weiss. *Id.* at 46.

On October 3, 2024, Plaintiffs filed their SAC. ECF 177. The SAC alleges four causes of action: (1) breach of fiduciary duty of oversight against Director Defendants and Officer Defendants, (2) violation of Section 10(b) of the Exchange Act and Security and Exchange Commission ("SEC") Rule 10b-5 against Wells Fargo, Director Defendants, and Officer Defendants, (3) violation of Section 20(a) of the Exchange Act against Director Defendants and Officer Defendants, and (4) violation of Section 20A of the Exchange Act against Officer Defendant Santos. SAC ¶¶ 424–451. These causes of action are related to two broad categories of alleged misconduct: (a) discriminatory hiring practices and (b) discriminatory lending practices. *See generally id.*

On October 17, 2024, Officer Defendants filed a motion to dismiss for failure to adequately plead demand futility and to state a claim. ECF 178 ("Mot."). Pursuant to stipulation, Plaintiffs timely filed an opposition and Officer Defendants timely filed a reply. ECF 180

2

1 (stipulation to extend briefing schedule), 193 ("Opp'n"), 194 ("Reply"). The Court heard oral argument on January 14, 2025.

### B. Factual Background

Given the Court's prior order on Defendants' motions to dismiss, the Court will assume familiarity with the factual background of the action. *See* ECF 176 (Factual Background). However, the Court will recite factual allegations asserted against the Officer Defendants. The Officer Defendants are three senior executives of Wells Fargo: Scott Powell, Carly Sanchez, and Kleber Santos.

Scott E. Powell ("Powell") has been the Senior Executive Vice President and Chief Operating Officer ("COO") of Wells Fargo since 2019. SAC ¶ 52.

Carly Sanchez ("Sanchez") is a Senior Executive in Human Resources at Wells Fargo. *Id.* ¶ 54. From 2013 to 2022, Sanchez was VP, Talent Acquisition, AA/EEO, Diversity Recruiting at the Company. *Id.*

Kleber R. Santos ("Santos") has been Senior Executive Vice President and CEO of Consumer Lending and a member of the Operating Committee at Wells Fargo since July 2022. *Id.* ¶ 55. Santos is responsible for consumer lending products and services, including Home Loans, Auto Loans, Personal Lending, Credit Cards, Retail Services, and Merchant Services. *Id.* Previously, between November 2020 and July 2022, Santos was Head of the Diverse Segments, Representation, and Inclusion group—a role in which Santos reported directly to CEO Charles Scharf and served on the Company's Operating Committee. *Id.*

#### 1. False and Misleading Statements Attributed to Officer Defendants

Plaintiffs allege Wells Fargo issued numerous false and misleading disclosures about its discriminatory practices. *Id.* ¶ 420. Some of these false and misleading statements either implicate or were made by Officer Defendants. *Id.* ¶ 421.

##### a. April 26, 2021: 2020 Social Impact and Sustainability Highlights

Plaintiffs allege that the false and misleading statements in Wells Fargo's 2020 Social Impact and Sustainability Highlights implicate Powell because he signed the document. *Id.* On April 26, 2021, Wells Fargo published a report entitled, "2020 Social Impact and Sustainability

3

Highlights." *Id.* ¶ 231. A section entitled "Elevating diversity, equity, and inclusion" outlined the Company's Diverse Search Requirement:

> To be successful, we must continue to create a truly diverse and inclusive workforce that brings a wide range of insights and perspectives to all levels of our company. Our Diverse Search Requirement requires that for most U.S. roles with total direct compensation greater than $100,000, at least 50% of interview candidates must be diverse with respect to at least one diversity dimension. Further, at least one interviewer on the hiring panel must represent at least one diversity dimension. For these purposes, our definition of diversity includes race/ethnicity, gender, LGBTQ, veterans, and people with disabilities. We're expanding this program internationally. As of December 31, 2020, the Diverse Search Requirement:
>
> Applied to approximately 95% of all U.S. roles with total direct compensation greater than $100,000; and
>
> Applied to approximately 48% of all active U.S. employees irrespective of their total direct compensation
>
> - 91% of applicable requisitions had a diverse interview slate [and]
> - 94% of applicable requisitions had a diverse interview team.

*Id.*

### b. October 7, 2021: Sanchez's Virtual Interview with the Institute for Corporate Productivity

On October 7, 2021, Sanchez participated in a virtual interview with the Institute for Corporate Productivity ("i4cp") during an installment of i4cp's Talent Acquisition Next Practices Monthly series. *Id.* ¶ 237. During the interview, i4cp host Lorrie Lykins asked Sanchez to "talk a little bit about building diverse candidate slates and increasing opportunities" for diverse job candidates at Wells Fargo. Sanchez responded:

> [W]e have really focused a lot on the external sourcing and making sure that we are proactively sourcing for building diverse candidate slates . . . . [W]e formalized the candidate slate requirement for roles $100K and above. It's probably about a year and a half or two years ago to say that you have to have 50% of the slate – of the candidate slate that will be interviewed needs to be diverse in one dimension or another. Also, the interview team has to be diverse, and so that's very important as well.

*Id.*

### c. May 27, 2022: Santos's Statements to *Business Insider*

On May 27, 2022, *Business Insider* published an article entitled, "Wells Fargo exec responds to reports that it denied mortgages to Black applicants and held sham job interviews." *Id.* ¶ 252. According to the article, Santos told *Business Insider*, "We researched all the specific hiring-practice allegations the reporter shared prior to the story's publication, and we could not corroborate these allegations as factual." *Id.* Santos further stated, "[i]f we believe that any manager has conducted an interview with a predetermined outcome in mind, we believe we should investigate and punish if we find wrongdoing." *Id.* Santos also stated "We don't have proprietary credit-underwriting models. We follow the guidelines of the GSEs." *Id.* ¶ 253. Santos acknowledged that the banking industry has long participated in damaging practices that marginalized Black Americans but said he "vehemently" disagrees that that's what's going on in this instance. *Id.*

### d. June 1, 2022: 2022 DE&I Report

On June 1, 2022, Wells Fargo published its 2022 DE&I Report. *Id.* ¶ 255. The report contained two "Messages" in the front including one message from Santos (which he signed). *Id.* In a section of that report entitled, Diverse candidate slates and interview teams, Wells Fargo stated:

> For most posted roles in the U.S. with total direct compensation greater than $100,000 per year, Wells Fargo requires that at least 50% of the interview candidates must represent a historically under-represented group with respect to at least one diversity dimension and at least one interviewer on the hiring panel must also represent a historically underrepresented group with respect to at least one diversity dimension.

*Id.*

### e. June 3, 2022: Santos's Further Statements to *Business Insider*

On June 3, 2022, *Business Insider* published an article entitled, "Wells Fargo's first diversity report shows progress but also that work remains to make Wall Street look more like Main Street." *Id.* ¶ 257. The article reported:

> Wells Fargo's Santos said the bank was focused on improving diversity among leaders. In 2020, the banking giant instituted a rule that for all posted roles in the US with annual compensation greater

than $100,000, at least half of interview candidates must be from a historically underrepresented group.

The rule is working, Santos said.

*Id.*

#### 2. Insider Trading Allegations Against Santos

Plaintiffs allege that on May 3, 2022, shortly before the truth about the sham interviews was disclosed, Santos sold 22,700 shares of his Wells Fargo stock while in possession of material non-public information for proceeds of approximately $1,008,788. *Id.* ¶ 319. Plaintiffs contend that the selling was highly unusual in timing and amount. *Id.* ¶ 320. Plaintiffs allege that Santos did not sell his stock pursuant to a Rule 10b-5-1 plan. *Id.* He sold a highly unusual amount of his Wells Fargo stock: 51.4 percent of all his overall holdings. *Id.* Further, the timing of the sale came coming just two weeks before *The New York Times* published its article about sham interview. *Id.* Santos did not engage in any major sales of his Wells Fargo stock in the two years prior to his May 3, 2022 sale. *Id.*

### C. Judicial Notice

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Alternatively, the Court may "consider materials that are submitted with and attached to the Complaint. [The Court] may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *see also In re Diamond Foods, Inc. Sec. Litig.*, No. C 11–05386 WHA, 2012 WL 6000923, at *16 (N.D. Cal. Nov. 30, 2012) ("Under the incorporation by reference doctrine, a court may also consider documents submitted by defendants that were referenced in the complaint and whose authenticity has not been questioned.").

With their motion to dismiss, Defendants request the Court take judicial notice of one exhibit. ECF 178-1, 178-2 ("RJN"). Plaintiffs do not oppose the request in their opposition. Exhibit 1 is a report published by Wells Fargo & Company in April 2021 titled "2020 Social

6

1  Impact and Sustainability Highlights." Defendants argue that Exhibit 1 is incorporated by

2  reference in the SAC and appropriate for judicial notice because Plaintiffs cited to and quoted

3  from the document in support of their allegations. SAC ¶¶ 230–31, 421. The SAC cites to Exhibit

4  1, but only addresses the Elevating diversity, equity, and inclusion section on page 17 (*id.* ¶¶ 230–

5  31) and the letter signed by Powell on page 5 (*id.* ¶ 421).

The Court finds that pages 5 and 17 of Exhibit 1 are incorporated by reference and, alternatively, are appropriate for judicial notice. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Failure to Adequately Plead Demand Futility

Rule 23.1(b)(3) provides the demand futility standard, requiring that a shareholder-derivative complaint "state with particularity" any "effort by the plaintiff to obtain the desired action from the directors," or, if the shareholder failed to make any such effort, the "reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1.

Wells Fargo "is a Delaware corporation and Delaware law therefore applies." SAC ¶ 39; *see also Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (finding that the substantive law which determines whether demand is futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief). Under Delaware law, "a shareholder who declines to make a demand on the board of directors may not bring a derivative action until he has demonstrated, with particularity, the reasons why pre-suit demand would be futile." *Id.* (citing *Khanna v. McMinn*, Civ. A. 20545-NC, 2006 WL 1388744, at *11 (Del. Ch. May 9, 2006)) (cleaned up). "Futility is gauged by the circumstances existing at the commencement of a derivative suit and concerns the board of directors sitting at the time the complaint is filed." *Id.* (citing *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F.Supp.2d 419, 430 (S.D.N.Y.2010), *aff'd*, 415 F. App'x. 285 (2d Cir.2011)) (internal quotations omitted). "Plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Id.*

Demand is futile under Delaware law if, "on a director-by-director basis," a majority of the board (1) "received a material personal benefit from the alleged misconduct"; (2) "faces a substantial likelihood of liability on any of the claims"; or (3) "lacks independence from someone who received a material personal benefit . . . or who would face a substantial likelihood of liability on any of the claims." *United Food & Com. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021); *see also Riley v. Chopra*, No. 21-55518, 2022 WL 614450, at *1 (9th Cir. Mar. 2, 2022). "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Zuckerberg*, 262 A.3d at 1059.

### B. Motion to Dismiss Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### C. Rule 9(b) and PSLRA

"Securities fraud class actions must meet the higher, more exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). Plaintiffs alleging securities fraud must plead all the elements of a securities fraud action with particularity, including "circumstances constituting fraud or mistake." *Id.* at 605; Fed. R. Civ. P. 9(b). It is not enough for a plaintiff merely to identify an allegedly fraudulent statement made by defendants. *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

Plaintiffs must allege "why the disputed statement was untrue or misleading when made." *Id.* at 1549.

Moreover, under the PSLRA, plaintiffs are required to "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009) (citations omitted). To properly plead falsity, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). To properly plead scienter, the complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2). Regarding the "strong inference" standard, a complaint will survive a motion to dismiss, "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007).

If pleading negligence, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with" negligence with respect to each alleged false statement or omission. 15 U.S.C. § 78u-4(b)(2)(A); *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) ("[Under the PSLRA standard,] a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence.").

### III. DISCUSSION

#### A. Demand Futility

Plaintiffs argue that Director Defendants faced "a substantial likelihood of liability" for the claims alleged against the Officer Defendants. Opp'n 9–11; *Zuckerberg*, 262 A.3d at 1059. The Court will address each of the asserted claims in turn.

**1. Plaintiffs Fail to Assert Demand Futility as to their Caremark Claim Against Officer Defendants.**

9

Plaintiffs assert a breach of fiduciary duty of oversight claim against Officer Defendants. SAC ¶¶ 424–434. A claim for breach of fiduciary duty challenging a board's oversight failure is characterized as a Caremark action. *In re Caremark Int'l*, 698 A.2d 959 (Del. Ch. 1996). The Delaware Chancery Court has recognized that Caremark claim may be brought against corporate officers as to matters within their areas of responsibility. *In re McDonald's Corp. S'holder Derivative Litig.*, 289 A.3d 343, 358 (Del. Ch. 2023).

In its previous order, this Court found that "for a Caremark claim against Officer Defendants, the Officer Defendants' oversight of discriminatory lending and discriminatory hiring practices will implicate a different set of facts than a Caremark claim against the Director Defendants." ECF 176, at 48. This Court also observed that "[t]he reporting systems or controls at a management-level are typically different from the reporting systems or controls for a company like Wells Fargo." *Id.*

Defendants argue that Plaintiffs add no new factual allegations that address the demand futility as the Caremark claims asserted against Officer Defendants. In their opposition, Plaintiffs do not address Defendants' arguments regarding the Caremark claim. Because Plaintiffs have not added new factual allegations addressing the Caremark claim, the Court finds that Plaintiffs have not alleged demand futility as to the Officer Defendants. Accordingly, the Court **GRANTS** with prejudice the motion to dismiss for failure to plead demand futility for the breach of fiduciary duty of oversight claim against Officer Defendants.

### 2. Plaintiffs Fail to Assert Demand Futility as to the Remaining Securities Claims against Officer Defendants.

Plaintiffs also assert violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Officer Defendants, violation of Section 20(a) against Officer Defendants, and violation of Section 20A of the Exchange Act against Officer Defendant Santos. SAC ¶¶ 435–451.

Plaintiffs allege that demand on the board was futile for the securities claims against the Officer Defendants because (i) each false statement "made by Officer Defendants implicates and is intertwined with the same facts and allegations concerning the Director Defendants' liability for false and misleading statements," (*id.* ¶ 422); (ii) "the factual allegations and false statements are

10

congruous, and the analysis of the claims against the Officer Defendants tread the same path as the claims against the Director Defendants," (*id.* ¶ 422); and, therefore, (iii) "the Director Defendants could not bring their business judgment to bear on a demand to investigate or prosecute any securities claims against the Officer Defendants because such litigation would implicate their own wrongdoing." *Id.* ¶ 423.

Plaintiffs contend Officer Defendants and the Director Defendants made similar statements about Wells Fargo's hiring practices. For one statement, Plaintiffs argues that Santos even collaborated with a Director Defendant. *See* ECF 176, at 14–15 (addressing DE&I Report with statements signed by Director Defendant Scharf and Santos). Plaintiffs assert determining whether Officer Defendants' statements were false would necessarily mean the Director Defendants' statements were false. Opp'n at 10.

Plaintiffs cite two cases in support of their assertions. In *Teamsters*, the court first found that demand was excused as to director defendants. *Teamsters Loc. 443 Health Servs. & Ins. Plan v. Chou*, No. CV 2019-0816-SG, 2020 WL 5028065, at \*25 (Del. Ch. Aug. 24, 2020). The court then turned to two claims asserted against officer defendants for breach of fiduciary duty and unjust enrichment. *Id.* at \*26. The claims asserted against officer defendants involved the same conduct that director defendants allegedly failed to oversee. *Id.* The court found that factual allegations against officer defendants and director defendants were congruous and implicated the same set of facts. *Id.* Accordingly, the court held that demand was also excused as to officer defendants. *Id.*

Similarly, in *Grabski*, the court first found that demand was excused as to director defendants for insider trading in breach of their fiduciary duty. *Grabski on behalf of Coinbase Glob., Inc. v. Andreessen*, No. 2023-0464-KSJM, 2024 WL 390890, at \*9 (Del. Ch. Feb. 1, 2024). Plaintiff alleged the same conduct against officer defendants, alleging that officer defendants received the same material, non-public information at the same time and traded on that information at around the same time. *Id.* at \*12. The factual allegations were congruous such that analysis of the claims against the officer defendants "tread[ed] the same path" as the claims

11

against the director defendants. *Id.* The court found that "given the near-total overlap in allegations," demand was also futile as to the officer defendants. *Id.*

Based on *Teamsters* and *Grabski*, the Court must determine whether the allegations against Officer Defendants "tread the same path" as the claims against the Director Defendants. As an initial matter, the Court previously found that the set of facts would not be congruous for the Section 20A claim against Santos. ECF 176, at 48. Plaintiffs have not included factual allegations that would alter the Court's previous conclusion. Thus, the Court finds that demand would not have been futile for the Section 20A claim against Santos.

Turning to Plaintiffs' Section 10(a) and Rule 10b-5 claims, Defendants argue Plaintiffs point to no facts to support a finding that a majority of the Board is liable for statements made by entirely different people. Reply at 2. Plaintiffs do not explain how a majority of the Board would face a disabling conflict with respect to evaluating these claims or any potential liability on a finding that any of the Officer Defendants acted with the requisite intent to defraud. *Id.* at 3. Defendants contend that what the Director Defendants allegedly knew about purported sham interviews is entirely different from what the Officer Defendants, who are charged with the day-to-day operations of Wells Fargo, might have known. *Id.* For the Section 20(a) claim, Defendants argue that Plaintiffs have not addressed demand futility as no Director Defendant—much less a majority of the Board—could face liability on a finding that an officer is a control person. *Id.*

The Court finds the instant case to be distinguishable from *Grabski* and *Teamsters*. *Grabski* and *Teamsters* did not address Section 10(b) and Rule 10b-5 and Section 20(a) claims, which implicate fact-specific scienter analyses. Unlike in *Grabski* and *Teamsters*, the Court here finds that the factual allegations against the Director Defendants and the Officer Defendants are not a near-total overlap. Determining whether a majority of the Board would be liable for statements made by Officer Defendants implicates a separate set of facts. For example, even if the Board found an officer's statements to be false or misleading, the Board would need to assess the officer's scienter.

The Delaware Chancery Court dealt with a similar issue in *In re Boeing Company Derivative Litigation*. No. CV 2019-0907-MTZ, 2021 WL 4059934, at \*36 (Del. Ch. Sept. 7,

12

2021). In *Boeing*, plaintiffs asserted Caremark claims against director and officer defendants. *Id.* After finding that demand would be futile for the Caremark claim against director defendants, the court turned to allegations against the officer defendants. *Id.* The court held that plaintiffs had not pled demand futility as to officer defendants or "argued that any of the [d]irector [d]efendants are beholden to or dominated by the Boeing officers such that they would be unable to assess Count II regardless of the theory of liability." *Id.* Similarly, here, Plaintiffs do not allege demand futility with particularity or allege that the Director Defendants were beholden or dominated by Officer Defendants.

As currently pleaded, Plaintiffs' allegations as to demand futility for claims asserted against Officer Defendants are conclusory as they add no facts that indicate demand on the board was futile. The Court finds that Plaintiffs' have not alleged demand futility as to their remaining securities claims. At this time, the Court finds that amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely given unless an apparent or declared reason exists such as futility of amendment). Accordingly, the Court **GRANTS** with prejudice the motion to dismiss for the remaining securities claims alleged against Officer Defendants.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** with prejudice the motion to dismiss for failure to plead demand futility on all claims asserted against Officer Defendants.

The Court **VACATES** the case management conference scheduled for January 30, 2025, and **MAINTAINS** the case management conference scheduled for April 17, 2025.

This Order resolves ECF 178.

**IT IS SO ORDERED.**

Dated: January 16, 2025

TRINA L. THOMPSON
United States District Judge