Mark C. Molumphy (SBN 168009)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
mmolumphy@cpmlegal.com

Marlon E. Kimpson (*pro hac vice*)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450
mkimpson@motleyrice.com

Derrick B. Farrell (*pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
3411 Silverside Rd.
Baynard Building, Ste. 104
Wilmington, DE 19810
Telephone: (302) 499-2158
dfarrell@bfalaw.com

*Lead Counsel for Lead Plaintiffs*

*[Additional Counsel on Signature Pages]*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY HIRING PRACTICES DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 3:22-cv-05173-TLT<br><br>**LEAD PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**<br><br>Date:  May 5, 2026<br>Time:  2:00 p.m.<br>Judge: Hon. Trina L. Thompson<br>Courtroom 9, 19th Floor |

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES................................................................... 1

     I.     INTRODUCTION ................................................................................... 1

     II.    BACKGROUND AND PROCEDURAL HISTORY............................................ 2

          A.    Factual Background ....................................................................... 2

          B.    Overview of Litigation.................................................................. 4

          C.    The Mediation and Extensive Settlement Negotiations............................ 5

          D.    Terms of the Proposed Settlement................................................... 6

          E.    Preliminary Approval and Notice ................................................... 7

III.    ARGUMENT ...................................................................................... 7

          A.    Legal Standard ............................................................................ 7

          B.    The Applicable Factors Support the Requested Fee Award .................................. 8

               1.    Results Achieved.................................................................. 8

               2.    The Amount of Time and Effort Devoted by Plaintiffs' Lead Counsel....... 9

               3.    The Relative Complexities of the Litigation and the Skill Applied by Counsel to Achieve the Resolution ................................................ 11

               4.    The Risks Undertaken by Counsel, the Contingent Nature of Representation, and the Uncertainty of Recovery.................................... 12

               5.    The Standing and Ability of Counsel ........................................... 13

               6.    The Fees and Expenses Were Negotiated at Arm's-Length ...................... 13

          C.    The Requested Expenses Should Be Approved ...................................... 14

          D.    Service Awards for Lead Plaintiffs Should Be Approved .................................... 15

II.     CONCLUSION ................................................................................... 16

PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF        LEAD CASE NO. 3:22-CV-05173-TLT
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

**TABLE OF AUTHORITIES**

**CASES**

*Basaraba v. Greenberg*,
    2014 WL 12591677 (C.D. Cal. Nov. 10, 2014) ......................................................................... 9

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011) ........................................................................ 10

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
    19 F.3d 1306 (9th Cir. 1994) .................................................................................................. 12

*DeStefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................................................... 13

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ........................................................................................... 10

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...................................................................................................... 14

*Hefler v. Wells Fargo & Co.*,
     2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................................................... 8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................................. 7, 8

*In re Apple Comput., Inc. Derivative Litig.*,
    2008 WL 4820784  (N.D. Cal. Nov. 5, 2008) ........................................................................... 8

*In re Atmel Corp. Derivative Litig.*,
    2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) .................................................................. 13, 14

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................................. 10

*In re Caremark Int'l. Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ................................................................................................ 11

*In re M.D.C. Holdings Sec. Litig.*,
    1990 WL 454747 (S.D. Cal. Aug. 30, 1990) .......................................................................... 12

*In re NVIDIA Corp. Derivative Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................................................ 12

*In re Omnivision Tech. Inc.*,
    2008 WL 123936 (N.D. Cal. Jan. 9, 2008 ............................................................................. 14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2009) ..................................................................... 11

*In re Oracle Sec. Litig.*,
    852 F. Supp. 1437 (N.D. Cal. 1994) ........................................................................................ 7

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................................... 11, 12

-ii-

*In re Rambus Inc. Derivative Litig.*,
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................................................ 14

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
   2008 WL 185809 (D.N.J. Jan. 14, 2008) ................................................................... 13

*In re Walt Disney Co. Derivative Litig.*,
    907 A.2d 69 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) ................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig*,
   19 F.3d 1291 (9th Cir. 1994) ..................................................................................... 12

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd,* 845 F. App'x. 563 (9th Cir. 2021) ...................... 8

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................ 13

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................. 7

*Klein v. Gordon*,
   2019 WL 1751839 (C.D. Cal. Feb. 12, 2019) .............................................................. 7

*Lewis v. Anderson*,
   692 F.2d 1267 (9th Cir. 1982) ................................................................................. 7, 16

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) .................................................................................................. 7, 9

*Nitsch v. DreamWorks Animation SKG Inc.*,
   2017 WL 2423161 (N.D. Cal. June 5, 2017) ............................................................. 16

*Police Ret. Sys. Of St. Louis v. Granite Contr., Inc.*,
   2022 WL 816473 (N.D. Cal. Mar. 17, 2022) ............................................................. 10

*Rodriguez v. W. Publ'g Co.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................... 15

*Six Mexican Workers v. Ariz Citrus Growers*,
    904 F.2d 1301 (9th Cir. 2011) ..................................................................................... 8

*Villalpando v. Exel Direct Inc.*,
   2016 WL 7785852 (N.D. Cal. Dec. 9, 2016) ............................................................. 16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................................... 10

**STATUTES**

Securities Exchange Act of 1934 ...................................................................................... 1

Securities Exchange Act Section 10(b) .............................................................................. 4

Securities Exchange Act Section 14(a) .............................................................................. 3

Securities Exchange Act Section 20(a) .............................................................................. 4

-iii-

-iv-

**RULES**

Fed. R. Civ. P. 23(h)1 ............................................................................................................... 1

Fed. R. Civ. P. 54(d)(2) ............................................................................................................. 1

SEC Rule 10b-5 ......................................................................................................................... 4

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 5, 2026 at 2:00 p.m., or as soon as counsel may be heard by the Honorable Trina L. Thompson, United States District Judge, of the United States Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the City of Pontiac Reestablished General Employees Retirement System ("Pontiac"), the City of Plantation Police Officers' Retirement Fund ("Plantation"), and Amy Isenberg ("Isenberg") (collectively, the "Lead Plaintiffs"), Court-appointed Lead Plaintiffs in this shareholder derivative action (the "Action"), will and hereby do move for an order pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) awarding: (i) attorneys' fees to Plaintiffs' Lead Counsel in the amount of $26,303,908.79; (ii) litigation expenses totaling $1,136,091.21 that Plaintiffs' Lead Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and (iii) service awards of $20,000 for each of the three Lead Plaintiffs.[1]

Pursuant to the Court's Order Granting Preliminary Approval (ECF 269), any objections to this Motion must be filed with the Court on or before April 14, 2026.  A proposed Order will be submitted with Plaintiffs' Lead Counsel's reply submission on or before April 28, 2026, after the deadline for objecting has passed.

This motion is supported by the following memorandum and points of authorities in support thereof; the Joint Stipulation and Agreement of Settlement dated October 13, 2025; the Joint Declaration of Marlon E. Kimpson, Lesley E. Weaver, Derrick B. Farrell, and Mark C. Molumphy in Support of (1) Final Approval of the Settlement and (2) Approval of an Award of Attorneys' Fees, Expenses, and Service Awards ("Joint Decl."); the previous filings and orders in this Action; and such other matters as the Court may consider.

---

[1] All capitalized terms used herein that are not defined have the meanings provided in the Joint Stipulation and Agreement of Settlement, dated October 13, 2025 ("Stipulation"), previously filed with the Court.  ECF 269-2.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should approve an award of $26,303,908.79 in attorneys' fees to Plaintiffs' Lead Counsel.

2.      Whether the Court should approve reimbursement of $1,136,091.21 in expenses to Plaintiffs' Lead Counsel.

3.      Whether the Court should approve a service award of $20,000 to each of the Lead Plaintiffs.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiffs' Lead Counsel Cotchett Pitre & McCarthy, LLP, Motley Rice LLC and Bleichmar Fonti & Auld LLP respectfully submit this memorandum in support of their motion for an award of attorneys' fees and expenses.  Lead Plaintiffs approve of the requests.  *See* Declarations of Lead Plaintiffs, attached as Exhibits A-C to the Joint Declaration.

Lead Plaintiffs, Wells Fargo, and the sixteen Director Defendants,[2] each a current or former director of Wells Fargo, have agreed to a Settlement in the above-captioned Action resolving claims brought derivatively by Lead Plaintiffs on behalf of Wells Fargo.  The Action alleges that the Director Defendants breached their fiduciary duties of oversight under Delaware law with respect to the Company's fair lending compliance and violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**") by making or allowing to be made misleading statements about the Company's diversity hiring practices.

The Settlement is the product of Plaintiffs' Lead Counsel's zealous advocacy over the past three years, which included extensive investigation; litigation of Defendants' motions to dismiss;

---

[2] Nominal Defendant Wells Fargo & Company ("**Wells Fargo**" or the "**Company**"), and Charles W. Scharf, Steven D. Black, Mark A. Chancy, Celeste A. Clark, Theodore F. Craver, Jr., Richard K. Davis, Wayne M. Hewett, Donald M. James, CeCelia G. Morken, Maria R. Morris, Felicia F. Norwood, Charles H. Noski, Richard B. Payne, Jr., Juan A. Pujadas, Ronald L. Sargent, and Suzanne M. Vautrinot (collectively, the "**Director Defendants**" and together with Wells Fargo, the "**Defendants**").

-1-

substantial fact discovery, including 16 depositions and the resolution of several discovery disputes before Magistrate Judge Sallie Kim; and exchange of six opening expert reports in preparation for trial. As the result of these efforts, and with the assistance of a prominent mediator, the Parties reached a comprehensive settlement. *First*, Wells Fargo will create a new $100 million borrower assistance fund for low- and moderate-income borrowers and communities to assist with mortgage downpayment and closing costs. *Second*, Wells Fargo will receive monetary consideration of $10 million from the Director Defendants' D&O Insurers. As set forth in the accompanying motion for final approval of the Settlement and the Joint Declaration, the Settlement provides substantial benefits to Wells Fargo and its current stockholders and avoids further lengthy and costly litigation.

Pursuant to the Settlement, and in light of the substantial benefits conferred on Wells Fargo and its stockholders as a result of Plaintiffs' Lead Counsel's efforts, Wells Fargo has agreed that, subject to Court approval, it will pay or cause the payment of Plaintiffs' Lead Counsel's attorneys' fees and expenses of no more than $27,500,000. Of this sum, Plaintiffs' Lead Counsel respectfully moves the Court for an attorneys' fee award of $26,306,091.79. The remainder would reimburse Plaintiffs' Lead Counsel's reasonable expenses in the total amount of $1,136,908.21 and award service awards of $20,000 for each of the three Lead Plaintiffs for their time and efforts in this successful action.

## II.    BACKGROUND AND PROCEDURAL HISTORY[3]

### A.  Factual Background

This shareholder derivative action alleges that the board of Wells Fargo, one of the largest financial institutions in the United States, failed to oversee and respond to two broad categories of alleged misconduct: (i) discriminatory lending practices; and (ii) discriminatory hiring

---

[3] The facts and procedural history of the case are set forth in detail in the accompanying Motion for Final Approval of Settlement ("Final Approval Motion") and in the Joint Declaration. Plaintiffs' Lead Counsel respectfully refer the Court to the Joint Declaration for a full description of the Action, the Settlement negotiations, the Settlement terms, and other relevant facts regarding the Settlement.

PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF                    LEAD CASE NO. 3:22-CV-05173-TLT
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

practices. Lead Plaintiffs' Second Amended Consolidated Complaint ("**Complaint**") ECF 177 ¶1.

Regarding Wells Fargo's alleged discriminatory lending practices, the Complaint asserted that the Company used factors in determining loan applicants' eligibility for home loans and refinancings, and in determining loan pricing and other terms and conditions, that resulted in disparate impact towards minority borrowers. *Id.* ¶99. These alleged practices were revealed when, on March 11, 2022, *Bloomberg* published an article titled "Wells Fargo Rejected Half Its Black Applicants in Mortgage Refinancing Boom," which described racial disparities in Wells Fargo's mortgage refinancing rates during 2020. *Id.* ¶16. The Complaint further alleged that Wells Fargo's discriminatory lending practices have exposed the Company to damages, including investigative expenses, harm to the Bank's reputation, and potential liability in a pending consumer class action titled *In re Wells Fargo Mortgage Discrimination Litig.*, No. 3:22-cv-00990-JD (N.D. Cal.).

Regarding Wells Fargo's alleged discriminatory hiring practices, the Complaint avers that after Wells Fargo announced, in March 2020, that it was expanding a policy requiring that at least half of all candidates interviewed for certain positions be diverse, the Company engaged in a practice of conducting sham interviews to comply with its diverse hiring initiative. *Id.* ¶172. These alleged practices began to be revealed when, on May 19, 2022, *The New York Times* published an article titled "At Wells Fargo, a Quest to Increase Diversity Leads to Fake Job Interviews." *Id.* ¶26. The Complaint alleged that, as a result of Wells Fargo's alleged discriminatory hiring practices, the board and/or executive management caused various false and misleading statements to be issued to stockholders, and approved repurchases of the Bank's stock at inflated prices, which has damaged the Company and exposed it to liability in a securities fraud class action titled *SEB Inv. Mgmt. AB, et al. v. Wells Fargo & Co., et al.*, No. 3:22-cv-03811-TLT (N.D. Cal.).

The Complaint alleged five causes of action: (1) breach of fiduciary duty of oversight against Director Defendants and Officer Defendants, (2) violation of Section 14(a) of the Exchange

-3-

Act based on negligence against Director Defendants, (3) violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Wells Fargo, Director Defendants, and Officer Defendants, (4) violation of Section 20(a) of the Exchange Act against Director Defendants and Officer Defendants, and (5) violation of Section 20A of the Exchange Act against Officer Defendant Santos. *Id.* ¶¶424–51. Each of these causes of action relates to the board's and/or executive management's alleged failure to meaningfully monitor Wells Fargo's discriminatory lending and hiring practices, which the Complaint alleged "have affected a significant number of borrowers and job applicants and caused Wells Fargo to endure costly regulatory scrutiny, class action litigation, and reputational harm, among other damages." *Id.* ¶1.

**B. Overview of Litigation**

On February 12, 2024, the Court appointed Plaintiffs Isenberg, Plantation and Pontiac as Lead Plaintiffs and the law firms Cotchett, Pitre & McCarthy LLP, Motley Rice LLC, and Bleichmar Fonti & Auld LLP as Plaintiffs' Lead Counsel. ECF 125.

On May 10, 2024, Lead Plaintiffs filed their Consolidated Amended Complaint, alleging claims for breach of fiduciary duty, violation of Section 14(a) of the Exchange Act, violation of Section 10(b) of the Exchange Act, and violation of Section 20(a) of the Exchange Act. ECF 147.

On June 11, 2024, Wells Fargo, and Scott Powell, Michael Santomassimo, Carly Sanchez, Kleber Santos and Johnathan Weiss (the "**Officer Defendants**") filed motions to dismiss the Consolidated Amended Complaint. ECF 152, 153. The Director Defendants filed joinders with respect to Wells Fargo's motion to dismiss. ECF 154, 155.

On September 20, 2024, the Court issued an Order granting-in-part and denying-in-part the motions to dismiss the Consolidated Amended Complaint, with leave to amend. ECF 176. The Court dismissed with prejudice Lead Plaintiffs' hiring claims brought under Delaware law. On January 16, 2025, the Court issued an Order granting the motion to dismiss for failure to plead demand futility on the claims against the Officer Defendants. ECF 198.

Following the Court's order on the motion to dismiss, formal discovery commenced. Joint Decl. ¶¶32-33. The Settling Parties engaged in significant fact discovery, including requests for

-4-

and production of approximately 314,000 documents in total (amounting to approximately 1.5 million pages), interrogatories, requests for admission, taking 16 depositions of party and non-party witnesses, and preparing for 12 additional calendared depositions. *Id.* ¶¶33-46. Plaintiffs took 11 merits depositions of current and former Wells Fargo employees and Director Defendants and Defendants took 4 merits depositions of former Wells Fargo employees and 1 Lead Plaintiff deposition. *Id.* ¶¶41, 44. The Settling Parties also engaged in substantial motion practice before Magistrate Judge Sallie Kim to resolve discovery disputes. *Id.* ¶¶34-35, 43-46. In August 2025, the Settling Parties exchanged 6 opening expert reports. *Id.* ¶¶47-48.

### C. The Mediation and Extensive Settlement Negotiations

In August 2025, the Settling Parties engaged in mediation discussions. *Id.* ¶49. These discussions commenced after completion of shareholder inspection demands, resolution of motions relating to the pleadings and discovery matters, substantial factual discovery, both in this case and in the parallel *Mortgage Discrimination* and *SEB* actions, and expert disclosures, including the exchange of expert reports addressing Wells Fargo's lending practices, corporate governance, and damages, amongst other subject matters.

After exchanging detailed mediation briefs, the Settling Parties engaged Judge Phillips, formerly the Chief Judge of the United States District Court for the Western District of Oklahoma, to serve as mediator. *Id.* ¶50. The Settling Parties held a full-day, in-person mediation session in New York City on August 21, 2025, which included participation by Lead Plaintiffs, Plaintiffs' Lead Counsel, Defendants' counsel, and representatives from Wells Fargo and its insurers. *Id.* ¶51. While the mediation did not result in a settlement, the Settling Parties continued to engage in further discussions of the merits of Lead Plaintiffs' claims and the Settling Parties' proposals with the assistance of Judge Phillips. *Id.* ¶52. Following extensive negotiations, the Settling Parties reached agreement on, and memorialized in a term sheet dated September 12, 2025, all substantive terms of the settlement, including the Borrower Programs (defined below). *Id.*

After the Settling Parties reached agreement on all substantive terms of the proposed settlement, Judge Phillips facilitated negotiations between the Settling Parties concerning the

-5-

amount of any Fee and Expense Award and Service Award.  *Id.* ¶54.  On October 7, 2025, the Settling Parties reached an agreement on a Fee and Expense Award of up to $27,500,000, subject to the Court's approval.  *Id.*

The Settling Parties' agreement to settle the Action, and the agreement on the Fee and Expense Award, are set forth in the Stipulation.  The Board has also reviewed the terms and conditions in the Settlement and believes that the Settlement is in the best interests of Wells Fargo and its shareholders.  *Id.* ¶55; Stipulation 11.

### D.  Terms of the Proposed Settlement

The settlement provides significant benefits to Wells Fargo and its shareholders, including Wells Fargo's commitment to provide $100 million in new funding for mortgage assistance. Stipulation ¶1.2.  The $100 million will be used by Wells Fargo to fund mortgage (downpayment and closing cost) assistance programs to benefit low- and moderate-income borrowers or borrowers currently residing in or purchasing property in low- and moderate-income census tracts ("**Borrower Programs**") in certain geographic regions in the United States.  The Borrower Programs will remain in existence for a minimum of three years after Final approval of the Settlement, and the entire $100 million will be used to provide mortgage assistance to low- and moderate-income borrowers or borrowers currently residing in or purchasing property in low- and moderate-income census tracts.  Wells Fargo agrees that the commitment to fund the Borrower Programs for three years is a result of the Action and confers substantial benefits to Wells Fargo. The Settlement also provides for monetary consideration of $10 million from the Director Defendants' D&O Insurer to Wells Fargo.  *Id.* ¶1.3.

With respect to fees and expenses, Wells Fargo agreed to pay a Fee and Expense Award of up to $27,500,000 to Plaintiffs' Lead Counsel, subject to the Court's approval, in recognition of the benefits conferred by the Settlement.  Stipulation ¶4.2.  The Fee and Expense Award is separate from and in addition to the $100 million spend amount for the Borrower Programs and the $10 million D&O insurance payment to Wells Fargo, and includes litigation expenses and the Service Awards to the Lead Plaintiffs.  *Id.*  The Fee and Expense Award was negotiated with the assistance

-6-

PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF                    LEAD CASE NO. 3:22-CV-05173-TLT
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

of the mediator, Judge Phillips. *Id.*

### E. Preliminary Approval and Notice

On January 1, 2026, the Court issued its Order Granting Unopposed Motion for Preliminary Approval of Settlement, preliminarily approving the Settlement and directing that notice be distributed to Wells Fargo's shareholders. ECF 269.

Plaintiffs' Lead Counsel understand that, as required by that Order, Defendants filed a Form 8-K with the U.S. Securities and Exchange Commission about the Settlement, published the Summary Notice in *Investor's Business Daily*, and made the Notice available on Defendants' website. Joint Decl. ¶¶61-63. Plaintiffs' Lead Counsel also published the Notice on their respective websites. *Id.* ¶64.

## III.    ARGUMENT

The proposed Fee and Expense Award is fair and reasonable, reflects the substantial and valuable relief obtained in the Settlement, and is supported by the factors applied by courts considering similar settlements.

### A.    Legal Standard

The U.S. Supreme Court has long endorsed the consensual resolution of attorneys' fees as the ideal toward which litigants should strive. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Where there is no evidence of collusion and no detriment to the parties, the Court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 695 (N.D. Ga. 2001).

"Under both Delaware and federal law, a court may grant fees and expenses to derivative counsel when the derivative suit . . . confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970); *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982). The benefit need not be pecuniary to give rise to attorney's fees. *See Klein v. Gordon*, No. C 17-00123, 2019 WL 1751839, at *1 (C.D. Cal. Feb. 12, 2019). As in the class action context, courts in this circuit use

-7-

either the lodestar or percentage method to assess the reasonableness of attorney's fees. *See, e.g., In re Wells Fargo & Co. S'holder Derivative Litig.,* 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020), *aff'd,* 845 F. App'x. 563 (9th Cir. 2021).

Courts consider various factors to determine a reasonable fee to compensate counsel for their efforts, including: (1) the results and benefits achieved by counsel; (2) the amount of time and effort applied to a case by counsel; (3) the relative complexities of the litigation, and the skills and creativity applied by counsel to their resolution; (4) the risks incurred by counsel, including the contingent nature of the case and the uncertainty of recovery of time and expenses advanced; and (5) the standing and ability of counsel. *See Six Mexican Workers v. Ariz Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 2011); *Hefler v. Wells Fargo & Co.,* No. 16-cv-5479, 2018 WL 6619983, at *12-13 (N.D. Cal. Dec. 18, 2018). Each of these factors strongly support the agreed upon $27,500,00 Fee and Expense Amount.

### B. The Applicable Factors Support the Requested Fee Award

#### 1. Results Achieved

Courts have consistently recognized that the result achieved is a major factor to be considered in approving a fee award. *See, e.g., Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"); *In re Apple Comput., Inc. Derivative Litig.*, No. 06-4128, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) ("[t]he principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest").

As discussed above, the Settlement provides substantial benefits to Wells Fargo and its shareholders in the form of a commitment to create a more inclusive housing system and supporting Wells Fargo's customers with homeownership. The dedication of $100 million to low-and moderate-income borrowers is a unique direct benefit to the customers of Wells Fargo. By expanding and deepening Wells Fargo's presence in the communities benefited by the Borrower Programs, and by strengthening Wells Fargo's reputation and relationships with

-8-

PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF                    LEAD CASE NO. 3:22-CV-05173-TLT
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

current and prospective customers in those communities, the Borrower Programs will substantially benefit Wells Fargo's long-term growth and success. All parties agree that this settlement package will confer substantial benefits to Wells Fargo and its shareholders.

In addition, Lead Plaintiffs' retained Professor Jeffrey N. Gordon, the Paul Richman Professor of Law at Columbia University Law School, a respected expert on financial regulation and corporate governance to further evaluate the benefits of the $100 million Borrower Programs. Gordon Decl. *See* ¶¶1-7. As set forth in greater detail in his Declaration, Professor Gordon opines that the "Borrower Programs will have substantial strategic value" for Wells Fargo and "generate substantial profits" including specifically, the potential "approximate present value between $1.1 billion (high) and $550 million (low)." *Id*. ¶¶1, 46.

Courts have repeatedly held that non-monetary benefits are extremely valuable to a corporation and its shareholders, particularly when they address the issues raised in the underlying litigation. *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 395-395 (1970). This Settlement "specifically bears on the concerns that are at the heart of this case" and uniquely creates a targeted program to address the harms alleged in this Action. *Basaraba v. Greenberg*, 2014 WL 12591677, at *4 (C.D. Cal. Nov. 10, 2014).

Moreover, the $10 million in monetary consideration to be paid to Wells Fargo by the D&O Insurer on behalf of the Director Defendants will provide immediate and certain recovery, allowing the Company to benefit from this cash payment without the risk, expense, and delay of continued litigation, including further discovery, summary judgment, trial, and appeals, or potential litigation between the Director Defendants and their insurers.

### 2. The Amount of Time and Effort Devoted by Plaintiffs' Lead Counsel

Consistent the late stage at which Settlement was reached, Plaintiffs' Lead Counsel devoted substantial time and effort to the Action. Counsel conducted a comprehensive investigation of the claims, prepared detailed complaints, received and reviewed a substantial

PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF                    LEAD CASE NO. 3:22-CV-05173-TLT
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

number of internal documents, conducted extensive fact and expert discovery, and engaged in extensive arms-length negotiations. Joint Decl. ¶¶32-54.

As set forth in their accompanying individual firm declarations, Plaintiffs' Lead Counsel collectively expended a total of 29,887 hours over the course of the investigation, litigation, and negotiation of the reforms reflected in the Settlement. Joint Decl. ¶96; *see also* Ex. F-I; Ex. J (Summary Lodestar and Expense Table). Plaintiffs' Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional by their hourly rates at the time of Settlement, is $22,913,284. All time spent after the Settlement, including preparing the preliminary and final approval papers and communicating with Wells Fargo shareholders, has not been included in this lodestar. Plaintiffs' Lead Counsel's rates range from $840 to $1,500 per hour for partners, $415 to $940 per hour for of counsels, and $350 to $900 for associates and other attorneys. *Id.* ¶101. These are "reasonable hourly rate[s] for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also Police Ret. Sys. Of St. Louis v. Granite Contr., Inc.,* No. 19-4744, 2022 WL 816473, at *9 (N.D. Cal. Mar. 17, 2022) (approving hourly rates for plaintiff's counsel in a securities case of between $175 to $1,325, stating "[t]his order accepts the claimed rates as generally tracking the going rate for those with the same levels of skill and experience in our geographic region.").

Accordingly, the requested fee of $26,303,908.79 represents a fractional multiplier of approximately 1.15 of Plaintiffs' Lead Counsel's lodestar. This is well within the "presumptively acceptable range of 1.0 [to] 4.0" used in this district. *Dyer v. Wells Fargo Bank*, *N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (citing *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1051 (9th Cir. 2002); *Buccellato v. AT&T Operations, Inc.*, No. 10-00463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding 4.3 lodestar multiplier) (collecting cases).

The successful prosecution of this Action required a high level of experience and expertise in shareholder litigation, as well as the ability to provide such services against defendants represented by well-resourced and highly skilled law firms. Joint Decl. ¶¶85-90.

-10-

Plaintiffs' Lead Counsel effectively litigated their client's claims on behalf of Wells Fargo and achieved an excellent result without unduly burdening the judicial system. The very favorable results achieved in the Settlement are a testament to the efforts of Plaintiffs' Lead Counsel.

3. **The Relative Complexities of the Litigation and the Skill Applied by Counsel to Achieve the Resolution**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs.*, *Inc.,* 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. Jan. 9, 2009). Reflecting the Ninth Circuit's observation that "derivative lawsuits are rarely successful," Plaintiffs' Lead Counsel confronted significant hurdles to obtaining any recovery. *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995).

As discussed in more detail in the Final Approval Motion and Joint Declaration, one of the biggest challenges in the case was demonstrating the futility of making a pre-suit demand on Wells Fargo's Board through particularized facts demonstrating that the Board faced a substantial likelihood of liability for utterly failing to carry out their duty of oversight. This so-called *Caremark* claim is widely recognized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l. Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). Moreover, Plaintiffs' Lead Counsel would be required to marshal proof that a majority of the Board lacked independence or disinterest. Defendants were expected to have argued that the operative standard for demonstrating a failure of oversight—the utter failure to implement and maintain internal controls—was undermined by the fact that Wells Fargo had internal control reporting processes. It was also expected that Defendants would argue that Plaintiff could not establish demand futility by showing that the directors faced a substantial likelihood of liability because there were no red flags of improper conduct upon which a substantial likelihood of liability could be based.

Once Lead Plaintiffs prevailed at the pleading stage, overcoming summary judgment challenges and proving stockholder derivative claims at trial is well-recognized as difficult and

-11-

notoriously uncertain.  *See Pac. Enters*., 47 F.3d at 378 (noting that "derivative lawsuits are rarely successful").  The "business judgment rule" affords directors the presumption that they acted on an informed basis and in good faith.  *See, e.g., In re Walt Disney Co. Derivative Litig*., 907 A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).

During the course of the litigation, Defendants vigorously contested whether any amount could be recovered at all in this Action, and that Lead Plaintiffs had not established demand futility.  The challenges involved to date and in proving damages were daunting, especially in light of the narrow rulings in the parallel securities class actions.  *See In re NVIDIA Corp. Derivative Litig.,* 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (risks regarding the amount of recoverable damages weighs in favor of settlement.).

In sum, the case presented numerous issues of legal and factual complexity, requiring the skill and experience of Plaintiffs' Lead Counsel to resolve.

### 4. The Risks Undertaken by Counsel, the Contingent Nature of Representation, and the Uncertainty of Recovery

Despite all the litigation risks inherent in shareholder derivative litigation, as discussed above, Plaintiffs' Lead Counsel represented Wells Fargo's shareholders on a fully contingent basis and advanced all of their attorney time and expenses for several years, with no guarantee of recovery.  The Ninth Circuit has confirmed that a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted.  *In re Wash. Pub. Power Supply Sys. Sec. Litig,* 19 F.3d 1291, 1299 (9th Cir. 1994), *aff'd, Class Plaintiffs v. Jaffe & Schlesinger, P.A*., 19 F.3d 1306 (9th Cir. 1994) ("Contingent fees . . . are accepted . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.").

While it is well–recognized that shareholder derivative suits provide the primary means of enforcing required standards of conduct on the part of corporate officials (*see, e.g.*, *In re M.D.C. Holdings Sec. Litig.,* No. 89-0090, 1990 WL 454747, at **3–10 (S.D. Cal. Aug. 30, 1990)), derivative litigation is "notoriously difficult" and uncertain.  *See In re Xcel Energy, Inc.,*

-12-

*Sec., Derivative & "ERISA" Litig.* 364 F. Supp. 2d 980, 1003 (D. Minn. 2005); *see also In re Atmel Corp. Derivative Litig.*, No. 06–4592, 2010 WL 9525643, at \*12 (N.D. Cal. Mar. 31, 2010) ("The odds of winning a derivative lawsuit are extremely small."). Accordingly, attorneys who agree to represent shareholder plaintiffs in derivative actions on a contingent basis face a substantial risk of non-payment that should be rewarded when a favorable result is obtained. *See, e.g., In re Schering-Plough Corp. S'holders Derivative Litig.,* No. 01–1412, 2008 WL 185809 at \*5 (D.N.J. Jan. 14, 2008) ("Because there is no . . . fee-shifting statute, derivative litigation counsel . . . took on significant risk.").

### 5. The Standing and Ability of Counsel

Plaintiffs' Lead Counsel utilized their standing and abilities during all phases of this case to benefit Wells Fargo and its shareholders. The attorneys who worked on this litigation have decades of experience in shareholder litigation and the numerous issues that such cases present. Joint Decl. ¶79; Exs. F-I.

Additionally, Plaintiffs' Lead Counsel faced defense counsel at the top of their profession from highly respected firms. *See DeStefano v. Zynga, Inc.,* No. 12-cv-04007, 2016 WL 537946, at \*17 (N.D. Cal. Feb. 11, 2016) ("The quality of opposing counsel is also relevant to the quality and skill that class counsel provided"). Wells Fargo and Defendants are represented by highly experienced and regarded counsel, who vigorously represented their clients. Joint Decl. ¶79. Wells Fargo was represented by Sullivan & Cromwell LLP, Defendant Charlie Sharf was represented by Cleary Gottlieb Steen & Hamilton LLP, and the remaining Defendants were represented by Wilkie Farr & Gallagher LLP. *Id.* The fact that Plaintiffs' Lead Counsel achieved this excellent Settlement in the face of such formidable legal opposition further evidences the quality of their work.

### 6. The Fees and Expenses Were Negotiated at Arm's-Length

Plaintiffs' Lead Counsel's proposed fee "is the product of arm's-length negotiation between counsel highly experience[d] in shareholder derivative actions and agreed upon only after the other terms of the Settlement were negotiated," which supports its reasonableness. *In*

-13-

*re Rambus Inc. Derivative Litig.,* 2009 WL 166689, at *4 (N.D. Cal. Jan. 20, 2009). Following the agreement on corporate reforms, Lead Plaintiffs and Wells Fargo separately negotiated, with the assistance of Judge Phillips, the parameters for Plaintiffs' Lead Counsel to seek Court approval of reasonable attorneys' fees and expenses, to be paid by Wells Fargo, as well as a service award to Lead Plaintiffs. *See* Joint Decl. ¶54.

Wells Fargo has determined the amount it is willing to pay for Plaintiffs' Lead Counsel's services, which merits strong consideration. *See In re Atmel Corp. Derivative Litig.,* 2010 WL 9525643, at *13 ("The parties first agreed on a gross settlement . . . and only then did they allocate the attorneys' fees. A court should refrain from substituting its own value for a properly bargained-for agreement."). Pursuant to the Settlement, if approved by the Court, Wells Fargo has agreed to pay a fee and expense amount of no more than $27,500,000 for the benefits conferred on Wells Fargo by the Settlement. *See* Stipulation ¶15.

### C. The Requested Expenses Should Be Approved

Plaintiffs' Lead Counsel respectfully request reimbursement of their reasonable expenses incurred in achieving the benefits provided by the Settlement. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that 'would normally be charged to a fee-paying client'"); *In re Omnivision Tech. Inc.*, No. C–04–2297, 2008 WL 123936, at *11 (N.D. Cal. Jan. 9, 2008) ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

As noted above, the total negotiated amount of $27,500,000 includes both fees and expenses. Stipulation ¶15. Based on firm declarations of Plaintiffs' Lead Counsel, the firms collectively incurred $1,136,091.21 in expenses as of Settlement. Joint Decl. ¶102, Ex. J. A detailed breakdown of these expenses is set forth in each firm's declaration. *See* Exs. F-I.

The largest component of the expenses (*i.e.* $835,787.95) was for professionals that Plaintiffs' Lead Counsel retained, including investigators and experts. Joint Decl. ¶105. The Parties exchanged six expert reports (three for Lead Plaintiffs and three for Defendants) addressing Wells Fargo's lending practices, corporate governance, and damages, amongst other

-14-

subject matters, in August 2025.  These expert reports substantially enabled Lead Plaintiffs and their Counsel to be well-informed about the strengths and weaknesses of the case and to engage in effective settlement discussions with Defendants.  *Id*. ¶49.

Another component of the expenses ($64,410.01) relates to the fees incurred in connection with the services of court reporters, who provided transcripts for the 16 depositions of party and non-party witnesses.  *Id*. ¶105

The other expenses for which Plaintiffs' Lead Counsel seek payment are the types of expenses that are necessarily incurred in complex commercial litigation and routinely paid by clients in non-contingent cases.  These expenses include, among others, court and service fees, electronic research database fees, duplicating costs, and travel.  *See Id.* ¶105; Ex. J.

It is respectfully submitted that the expenses are all reasonable, fall within the categories of expenses that courts have repeatedly stated are compensable, and were directly incurred in the prosecution of the Action.  As these expenses were incurred in connection with reaching the successful resolution of this matter, reimbursement of the expenses should be approved.

**D.      Service Awards for Lead Plaintiffs Should Be Approved**

The Ninth Circuit has long recognized the propriety of awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  In addition to furthering the public policy of encouraging investors to protect corporations' interests, the service award requested here aims to compensate Lead Plaintiffs for the time and effort they devoted to this litigation and its resolution.  Here, over the span of nearly four years, Lead Plaintiffs, *inter alia,* (a) investigated the case prior to initiating the Action as plaintiffs; (b) reviewed material court filings; (c) reviewed and responded to updates from, and requests for information from, Plaintiffs' Lead Counsel; and (d) consulted with counsel over the course of the lengthy settlement discussions with Defendants, ultimately giving counsel settlement authority, and approving the Settlement.  *See* Exs. A-C.

For these efforts, Lead Plaintiffs seek an award of $20,000 each, which is in line with awards in similar cases. *See, e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.,* 2017 WL 2423161 at *16 (N.D. Cal. June 5, 2017) (collecting cases approving awards up to $150,000 per plaintiff and granting request for a $90,000 service award for each named plaintiff as reasonable); *Villalpando v. Exel Direct Inc.,* 2016 WL 7785852 at *1 (N.D. Cal. Dec. 9, 2016) (the requested $15,000 service awards are reasonable and warranted.).

## II.     CONCLUSION

As stated above, as a result of Plaintiffs' Lead Counsel's dedication and litigation efforts, they have successfully negotiated a favorable Settlement that will benefit Wells Fargo and its shareholders for years to come.  Based on these circumstances, and consistent with the factors applied by federal courts, including within the Northern District of California, Plaintiffs' Lead Counsel respectfully request that the Court issue an order awarding attorneys' fee award of $26,303,908.79, approving reimbursement of $1,136,091.21, and awarding service awards of $20,000 for each of the three Lead Plaintiffs.  A proposed Order will be submitted with Plaintiffs' Lead Counsel's reply submission on or before April 28, 2026, after the deadline for objecting has passed.

Dated:  February 27, 2026

Respectfully submitted,
**COTCHETT, PITRE & MCCARTHY LLP**

*/s/ Mark C. Molumphy*
Mark C. Molumphy (SBN 168009)
Tyson Redenbarger (SBN 294424)
Elle D. Lewis (SBN 238329)
Gia Jung (SBN 340160)
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
mmolumphy@cpmlegal.com
tredenbarger@cpmlegal.com
elewis@cpmlegal.com
gjung@cpmlegal.com

**MOTLEY RICE LLC**
Marlon E. Kimpson (*pro hac vice*)

-16-

William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Vanessa A. Davis (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
mkimpson@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
vdavis@motleyrice.com

**BLEICHMAR FONTI & AULD LLP**
Nancy A. Kulesa (*pro hac vice*)
300 Park Avenue, Suite 1301
New York, NY 10022
Telephone: (212) 789-1343
nkulesa@bfalaw.com

**BLEICHMAR FONTI & AULD LLP**
Derrick B. Farrell (*pro hac vice*)
3411 Silverside Rd.
Baynard Building, Suite 104
Wilmington, DE 19810
Telephone: (302) 499-2158
dfarrell@bfalaw.com

*Lead Counsel for Lead Plaintiffs*

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne B. Beste (SBN 326881)
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
fbottini@bottinilaw.com
achang@bottinilaw.com
abeste@bottinilaw.com

*Additional Counsel for Plaintiff Amy J. Isenberg*

**STRANCH, JENNINGS & GARVEY, PLLC**
Lesley Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
1111 Broadway, Suite 03-130
Oakland, CA 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

-17-

*Additional Counsel for Plaintiff City of Plantation Police Officers' Retirement Fund*

PLAINTIFFS' NOTICE AND MOTION FOR APPROVAL OF                LEAD CASE NO. 3:22-CV-05173-TLT
ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS