UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO & COMPANY HIRING PRACTICES DERIVATIVE LITIGATION | **CASE NO. 22-CV-05173-TLT**<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND GRANTING, AS MODIFIED, MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 280, 281, 290 |

## I.    INTRODUCTION

This is a derivative security action alleging that officers of Wells Fargo & Company ("Wells Fargo") breached their duties in overseeing the company's hiring and lending practices.

On September 15, 2025, Lead Plaintiffs, Amy Isenberg, the City of Pontiac Reestablished General Employees' Retirement System, and the City of Plantation Police Officers' Retirement Fund, Defendants Wells Fargo, and the sixteen directors, informed the Court that they had reached an agreement-in-principle to settle this derivative action in its entirety. ECF 267. On January 13, 2026, the Court granted Plaintiffs' unopposed motion for preliminary approval of the settlement. ECF 276.

Before the Court are Plaintiffs' Motion for final approval of proposed settlement and motion for attorneys' fees, expenses, and service awards. ECF 280, 281. No objections have been made. Having considered the briefings of the motions, the terms of the Settlement Agreement, and the other matters on file in this action, the Court GRANTS the motion for final approval and GRANTS-IN-PART AND MODIFIES-IN-PART the motion for attorneys' fees, expenses, and service awards.

## II.    BACKGROUND

### A.    Procedural History

#### i.    The Derivative Action

On April 11, 2024, the Court issued an order consolidating four related cases (*Rogers v. Wells Fargo & Co. et al.*, No. 22-cv-05473-TLT; *City of Pontiac Reestablished General Emps. Ret. Sys. v. Black et al.*, No. 23-cv-03366-TLT; *Asbestos Workers Philadelphia Pension Fund et al. v. Scharf et al.*, No. 23-cv-01168-TLT; *Cook v. Black et al.*, No. 23-cv-04934-TLT) with the lead case (*Gervat et al. v. Wells Fargo & Co. et al.*, No. 22-cv-05173-TLT) under the caption *In re Wells Fargo & Company Hiring Practices Derivative Litigation*.  ECF 139.  The Court granted-in-part and denied-in-part Defendants' motions to dismiss.  ECF 176.  The Court resolved the motions as to allegations against nominal Defendant Wells Fargo and Defendants Steven D. Black, Mark A. Chancy, Celeste A. Clark, Theodore F. Craver, Jr., Richard K. Davis, Wayne M. Hewett, Cecelia G. Morken, Maria R. Morris, Felicia F. Norwood, Richard B. Payne, Jr., Juan A. Pujadas, Ronald L. Sargent, and Suzanne M. Vautrinot, and CEO Charles W. Scharf (collectively, "Director Defendants").  *Id*. at 20–46.  The Court provided Plaintiffs leave to amend to include allegations that plead demand futility for claims asserted against Defendants Scott Powell, Michael Santomassimo, Carly Sanchez, Kleber Santos, and Jonathan Weiss.  *Id*. at 46.

On October 3, 2024, Plaintiffs filed their SAC.  ECF 177. The SAC alleges four causes of action: (1) breach of fiduciary duty of oversight against Director Defendants and Officer Defendants, (2) violation of Section 10(b) of the Exchange Act and Securities and Exchange Commission Rule 10b-5 against Wells Fargo, Director Defendants, and Officer Defendants, (3) violation of Section 20(a) of the Exchange Act against Director Defendants and Officer Defendants, and (4) violation of Section 20A of the Exchange Act against Officer Defendant Santos.  *Id*. ¶¶ 424–451.  On January 16, 2025, the Court granted Officer Defendants' motion to dismiss for failure to plead demand futility with prejudice. ECF 198.

On July 12, 2025, the Court extended the parties' Alternative Dispute Resolution deadline.  ECF 239.  The parties reported that they had an all-day mediation scheduled for August 21, 2025.  *Id*.  On September 15, 2025, the parties notified the Court that they reached a settlement in

principle on September 12, 2025.  ECF 267.

On October 13, 2025, Plaintiffs filed an unopposed motion for preliminary approval of settlement.  ECF 269.  On October 17, 2025, Defendants filed a statement of non-opposition to Plaintiffs' motion.  ECF 271.  On January 13, 2026, the Court granted the unopposed motion for preliminary approval of the settlement.  ECF 276.

On February 27, 2026, Plaintiffs filed the motion for final approval of proposed settlement and the motion for final approval of attorneys' fees, expenses and service awards.  ECF 280, 281. On April 28, 2026, Plaintiffs filed a reply to these motions and Defendant Wells Fargo's counsel filed a notice of preliminary approval of settlement.  ECF 285, 286.  The hearing was set for May 5, 2026, concurrently with the related security class action below.

### ii.    The Related Securities Class Action

On June 28, 2022, a shareholder—on behalf of a purported class of investors—filed a class action complaint against Wells Fargo and its executive officers for violations of federal securities laws. *SEB Inv. Mgmt. AB, et al. v. Wells Fargo & Co., et al.*, No. 3:22-cv-03811 (N.D. Cal.) ("SEB").  This class action alleged securities fraud in connection with the issuance of alleged materially false and misleading statements and failure to disclose facts concerning Wells Fargo's hiring practices. *Id*.

On September 25, 2025, SEB reached a settlement. *Id*. at ECF 249.  The Court granted preliminary approval of the settlement on November 13, 2025. *Id*. at ECF 269.

On February 27, 2026, SEB filed the motion for final approval of class action settlement and motion for attorneys' fees and costs.  ECF 271, 272.  On April 24, 2026, SEB filed a reply to these motions.  ECF 275.

### B.    Terms of Settlement

Under the terms of the Settlement Agreement, ECF 269-2, Wells Fargo will create a $100 million borrower assistance fund for mortgage assistance ("Borrower Programs").  ECF 280 at 17–18.  The Borrower Programs will assist "low- and moderate-income borrowers or borrowers currently residing in or purchasing property in low- and moderate-income census tracts in certain

*United States District Court*
*Northern District of California*

3

geographic regions[1] in the United States." ECF 280 at 18. This program will remain in existence for a minimum of three years after the final approval of the settlement. ECF 269-2 at 15; ECF 280 at 18. Wells Fargo will also receive $10 million in monetary consideration from the Director Defendants' directors and officers liability ("D&O") insurance. *Id*. There will be no reversion to Wells Fargo or transfer to a cy pres recipient. ECF 280 at 21.

In exchange, Lead Plaintiffs, Wells Fargo, and any Person acting derivatively on behalf of Wells Fargo agree to release the "Released Shareholder Claims" against the Released Defendant Persons. ECF 269-2 at 19; ECF 280 at 18. Released Shareholder Claims include claims asserted in this action or claims that could have been asserted in this action or arise out of the same factual allegations. ECF 269-2 at 6–7. Additionally, Director Defendants and Wells Fargo agree to release the "Released Defendant Claims" against the Released Shareholder Persons. *Id*. at 19. Released Defendant Claims include claims that Defendants have or could have asserted in this action, arising out of the same factual allegations. *Id*. at 6.

As to attorneys' fees and costs, Lead Counsel has requested a Fee and Expense Award of $27,500,000, which was negotiated at arm's length with the assistance of the mediator, Judge Layn R. Phillips (retired). ECF 281 at 12–13. This award is separate from and in addition to the $100 million for Borrower Programs and the $10 million D&O insurance payment. *Id*. at 12.

---

[1] Atlanta City-Hammonton, NJ Metro SA; Fort Worth-Arlington-Grapevine, TX Metro Division; Dallas-Plano-Irving, TX Metro Division; Nassau County-Suffolk County, NY Metro Division; New York-Jersey-City-White Plains, NY-NJ Metro Division; Newark, NJ Metro Division; Wilmington, DE-MD-NJ Metro Division; Vineland, NJ Metro SA; Anaheim-Santa Ana-Irvine, CA Metro Division; Denver-Aurora-Centennial, CO Metro SA; Los-Angeles-Long Beach-Glendale, CA Metro Division; San Diego-Chula Vista-Carlsbad, CA Metro SA; Oxnard-Thousand Oaks-Ventura, CA Metro SA; San Francisco-San Mateo-Redwood City, CA Metro Division; San Jose-Sunnyvale-Santa Clara, CA Metro SA; Oakland-Fremont-Berkeley, CA Metro Division; Austin-Round Rock-San Marcos, TX Metro SA; Arlington-Alexandria-Reston, VA-WV Metro Division; Atlanta-Sandy Springs-Roswell, GA Metro Division; Baltimore-Columbia-Towson, MD Metro SA; Camden, NJ Metro Division; Charlotte-Concord-Gastonia, NC-SC Metro SA; Lakewood-New Brunswick, NJ Metro Division; Marietta, GA Metro Division; Minneapolis-St. Paul-Bloomington, MN-WI-Metro SA; Montgomery County-Bucks County-Chester County, PA Metro Division; Philadelphia, PA Metro Division; Washington, DC-MD Metro Division; Allentown-Bethlehem-Easton, PA-NJ Metro SA (NJ counties only); Trenton-Princeton, NJ Metro SA; Chicago-Naperville-Schaumburg, IL Metro Division; Miami-Miami Beach-Kendall, FL Metro Division. ECF 269-2, Appendix A.

4

### III.    FINAL APPROVAL OF SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23.1, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). Rule 23, in turn, "governs a district court's analysis of the fairness of a settlement of a shareholder derivative action." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-cv-06003, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, No. 08-cv-4966, 2011 WL 13156644, at *2 (N.D. Cal. Aug. 26, 2011) ("Within the Ninth Circuit, Rule 23's requirements for approval of class action settlements apply to proposed settlements of derivative actions." (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995))). Accordingly, "[c]ourts considering settlements of derivative actions have generally found '[c]ases involving dismissal or compromise under Rule 23(e) of nonderivative cases . . . relevant by analogy.'" *Lloyd v. Gupta*, No. 15-cv-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (second and third alterations in original) (quoting 7C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1839 (3d ed. 2007)).

### A.    Notice is Appropriate.

Rule 23.1(c) requires that notice of the Settlement "must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). In determining the appropriate notice method, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders." *Bushansky v. Armacost*, No. 12-cv-01597-JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014).

The Court previously approved the Notice and Summary Notice. ECF 276 at 11–13. On January 22, 2026, Wells Fargo filed a Form 8-K with the Securities and Exchange Commission, attaching the Notice. ECF 286 ¶ 2. On January 26, 2026, the Summary Notice was published in *Investor's Business Daily*. *Id*. ¶ 4. Additionally, the Notice and Joint Stipulation and Agreement of Settlement were posted on the Investor Relations page of Wells Fargo's website and on the websites of Lead Counsel's respective law firms. *Id*. ¶ 3; ECF 285-1 ¶ 2. The Notice advised shareholders of the April 14, 2026 deadline to file objections. ECF 285-1 ¶ 2. As of April 28, 2026, no objections have been received from any Wells Fargo shareholders. *Id*. ¶3.

5

Given this comprehensive distribution, the Court finds that notice is consistent with Rule 23.

**B.    The Settlement is Fair and Reasonable**

A court may approve a proposed derivative litigation or class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id*. at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  The review of the settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (citing *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In consideration of the *Hanlon* factors, the Court finds the Settlement is fair and reasonable.  Plaintiffs faced significant risks because "a claim based [on] a director's alleged failure adequately to oversee corporate activities is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.""  *In re Oracle Corp. Derivative Litig.*, No. C 10-3392 RS, 2011 WL 5444262, at *3 (N.D. Cal. Nov. 9, 2011).  Moreover, Plaintiffs concede that federal securities claims premised on Wells Fargo's allegedly discriminatory lending practices would be complex, and Defendants had the opportunity to close

United States District Court
Northern District of California

the current case by forming a Special Litigation Committee to file a motion to terminate.  ECF 280 at 27; s*ee In re Carvana Co. S'holders Litig.*, 2024 WL 1300199, at \*1 (Del. Ch. Mar. 27, 2024) (granting Special Litigation Committee's motion to terminate).  Moreover, whether the parties reach an equivalent award of the $100 million Borrower Programs through a post-trial judgment is not guaranteed, given the possibility of protracted appeals.  ECF 280 at 27; *see Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

Plaintiffs engaged in extensive fact and expert discovery and settled just months before the trial.  Prior to the current action, Plaintiffs claimed that Lead Plaintiffs received Board-level minutes and materials after making a demand under Section 220 of the Delaware General Corporation Law.  ECF 280 at 24.  Further, Plaintiffs served and responded to discovery requests, exchanged expert reports, conducted or defended 16 depositions, and analyzed approximately 1.5 million pages of 313,000 documents.  *Id*.  Plaintiffs filed multiple complaints, briefed motions to dismiss, exchanged six expert reports and two rounds of detailed mediation briefs, and participated in a full-day mediation with the experienced mediator, United States District Court Judge Layn R. Phillips (retired), followed by settlement negotiations.  *Id*. at 16, 24; *see Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at \*6 (N.D. Cal. May 5, 2023) (finding that the parties conducted sufficient discovery given exchange of written discovery, deposition of the plaintiff's market efficiency expert, briefing class certification and multiple motions to dismiss, and "a full-day mediation and subsequent settlement negotiations.").

After the notice was sent to Class Members, no objection to the Settlement has been filed as of April 28, 2026.  ECF 280 at 30–31; ECF 285-1 ¶ 3.  Weighing these factors together with the fact that the Settlement Agreement and the amount were the product of arm's-length and informed negotiations with the experienced mediator, the Court finds the settlement proposal fair and reasonable.  ECF 280 at 28–30.

Accordingly, the Court GRANTS Plaintiffs' motion for final approval of proposed settlement.

## IV.    MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A.    Attorneys' Fees and Cost

"Under both Delaware and federal law, a court may grant fees and expenses to derivative counsel when the derivative suit creates a common fund or confers a substantial corporate benefit." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970); *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982). "[W]here the litigation results in a 'common fund' that benefits the general class of shareholders, courts may allocate a percentage of the total fund as the fee award," *In re Oracle Sec. Litig.*, 852 F. Supp. at 1449, "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Under the percentage-of-the-fund method, the Ninth Circuit "typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *accord Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *16 (N.D. Cal. Nov. 6, 2023). Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). "Courts often also cross-check the amount of fees against the lodestar." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Derivative counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are

United States District Court
Northern District of California

authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Lead Counsel requests an attorney's fee award of $26,303,908.79 and an expense award of $1,136,091.21. ECF 281 at 6, 22. While these awards are not part of the $110 million settlement fund (i.e., the $100 million of the Borrower Programs and the $10 million D&O insurance payment), for the purpose of calculation, these awards amount to 25% of the settlement fund. Lead Counsel's total lodestar is $22,913,284.25 based on 29,887.40 hours of work. ECF 281 at 16; ECF 282 at 24. Lead Counsel's hourly rates range from $840 to $1,500 for partners, $415 to $940 for Counsel, $400 to $900 for Associates, and $350 to $595 for other attorneys. ECF 282 at 25; *see In re Alphabet, Inc. Sec. Litig.*, 2024 WL 4354988, at *7 (N.D. Cal. Sep. 30, 2024) (approving hourly rates ranging from $110 to $1,400). When cross-checked, the requested fee award amounts to approximately a 1.15 multiplier on the lodestar. *See Vizcaino*, 290 F.3d at 1051 (statistical findings show a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (approving 1.47 multiplier in securities case); *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL 5161927, at *9 (N.D. Cal. Nov. 5, 2021) (approving 2.5 multiplier in securities case); *Pardi v. Tricida, Inc.*, No. 21-cv-00076-HSG, 2025 WL 2988737, at *10 (N.D. Cal. Oct. 23, 2025) (approving 1.41 multiplier in securities case). No objector has challenged any of the Lead Counsel's hours or rates, and Defendants do not oppose the fee request.

Additionally, Lead Counsel seeks reimbursement for expenses totaling $1,136,091.21, of which the largest portion, $ 835,787.95, was for three testifying experts who prepared six expert reports. ECF 281 at 20; ECF 282 at 26–27. The second-largest expense, $64,410.01, is the cost of court reporters and transcripts from sixteen fact witness depositions. ECF 281 at 21; ECF 282 at 27. Other expenses include costs for litigation-related expenses not duplicated in the hourly rate, such as service fees, research fees, copies of case documents, and travel. ECF 281 at 21; ECF 282 at 27-28. The Court finds this cost amount reasonable, fair, and adequate.

## B. Service Award

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citation omitted). "Incentive awards are payments to class

9

representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

"Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Court "must evaluate named plaintiff's requested award using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Two institutional plaintiffs (i.e., the City of Pontiac Reestablished General Employees Retirement System and the City of Plantation Police Officers' Retirement Fund) and individual plaintiff Amy Isenberg have each requested a service award of $20,000.00. ECF 281 at 21–22. These awards compensate these plaintiffs for over three years of active participation, including investigating the case before filing, reviewing court filings, responding to updates from Lead Counsel, consulting with counsel during settlement discussions, giving settlement authority, and approving the Settlement. ECF 281 at 21; ECF 282-1; ECF 282-2; ECF 282-3. These awards will be paid from the $27,500,000.00 Fee and Expense Award and do not reduce the $110 million benefit to Wells Fargo. It was indicated that during the hearing, the Service Award for the two institutional plaintiffs will be allocated to their operating budget to reimburse for the time spent, while the Service Award for the individual plaintiff will be personally budgeted without involving any collateral agreement or third party. ECF 288.

10

United States District Court
Northern District of California

The City of Pontiac Reestablished General Employees Retirement System and The City of Plantation Police Officers' Retirement Fund declared that for more than three years, they devoted at least 70 and 100 hours, respectively, to the representation of this action by obtaining Board-level books and records from Wells Fargo before its derivative action, reviewing court filings, engaging in the discovery process, preparing depositions, and consulting with counsel throughout mediation and settlement discussions. ECF 290-1 ¶¶ 3–4. ECF 290-2 ¶¶ 3–4. Amy Isenberg declared that for more than three years, she devoted approximately 183 hours to the representation of this action in which she spent 34 hours reviewing and discussing with counsel Board-level books and records from Wells Fargo before its derivative action, reviewing and filing complaints, reviewing motion for consolidation and working with counsel on her motion for appointment as Co-Lead Plaintiff, 15 hours reviewing and discussing with counsel a writ petition filed in a related state action to enforce the books and records demand, 26 hours reviewing court filings and receiving updates on such filings with counsel, 11 hours collecting, reviewing, and responding to requests for documents and information from counsel, 65 hours reviewing Plaintiffs' written discovery to Defendants, responding to written discovery from Defendants, and preparing and sitting for her deposition by counsel, and 32 hours consulting with counsel throughout mediation and settlement discussions. ECF 290-3 ¶¶ 3–4.

The Court declines to award a $20,000.00 service award to each of the three Lead Plaintiffs. This district sets $5,000.00 is presumptively reasonable. *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1008 (N.D. Cal. 2025); *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020); *Mobile Emergency Hous. Corp. v. HP Inc.*, No. 5:20-cv-09157-SVK, 2025 WL 844412, at \*2 (N.D. Cal. Mar. 18, 2025). The total requested service awards represent only a small portion of the Fee and Expense Award (i.e., 0.28%) and do not interfere with the $110 million benefit to Wells Fargo. They were involved from the outset of this action through the settlement near trial, providing litigation support. However, the substance and hours of their contributions are slightly more than the kind of work on behalf of the class of shareholders or the company, warranting an amount beyond the presumptive $5,000.00, but not the requested $20,000.00. *See Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST,

11

2021 WL 837626 (N.D. Cal. Feb. 4, 2021) (approving a $20,000 service award for each of the named plaintiffs where they each spent approximately 490 and 300 hours to support litigation at their personal and professional risk); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (approving $25,000 for each named plaintiff because they each substantially participated and contributed more than the average lead plaintiff by spending more than 400 hours, and the award fee is deducted from counsel's fees rather than the settlement fund).

Accordingly, the Court finds that the Service Awards of $10,000.00 for each of the three Lead Plaintiffs is fair and reasonable.

## V.    CONCLUSION

The introduction of the Borrower Programs, a new initiative focusing on low and moderate income borrowers, represents a meaningful step toward expanding equitable access to financial services. For many individuals and communities historically excluded from traditional lending pathways, this program signals a shift toward more inclusive underwriting practices and a deeper recognition of systemic barriers. By reassessing conventional credit evaluation models and incorporating more holistic criteria, this initiative has the potential to unlock opportunities for applicants who have previously been overlooked or unfairly categorized as high-risk. This approach not only broadens access to capital but also fosters long-term financial stability and community growth.

Equally significant is the broader context in which this initiative emerges. Efforts to address past shortcomings, particularly around hiring practices and organizational accountability, are critical to rebuilding trust. Restorative measures that prioritize transparency, equitable hiring, and internal culture reform will be essential in ensuring that progress is both genuine and sustainable.

Taken together, these developments suggest a more comprehensive strategy: one that aligns external financial inclusion with internal institutional change. If implemented consistently and with accountability, these efforts can help repair relationships with marginalized communities and set a stronger precedent for the financial sector at large. While continued monitoring,

United States District Court
Northern District of California

community engagement, and measurable benchmarks will be key to evaluating the program's long-term success, this initiative marks an encouraging move toward a more inclusive and responsible banking framework.

Based upon the foregoing, the motion for final approval of settlement is GRANTED. The motion for attorneys' fees, expenses, and service awards is GRANTED-IN-PART AND MODIFIED-IN-PART as follows:

1.  The Court grants final approval of the settlement agreement.

2.  The Court awards Lead Counsel 25% of the fund, amounting to $26,303,908.79 in attorneys' fees.

3.  The Court awards Lead Counsel litigation costs up to $1,136,091.21.

4.  The Court awards the named individual and institutional plaintiffs Amy Isenberg, the City of Pontiac Reestablished General Employees Retirement System, and the City of Plantation Police Officers' Retirement Fund, class representative awards, as modified, in the amount of $10,000.00 each.

5.  There will be no reversion to Wells Fargo or transfer to a cy pres recipient.  ECF 280 at 21, 290 ¶ 13.

6.  The Court adopts and incorporates the terms and conditions contained in the joint proposed order and final judgment proffered by the parties, except as modified herein. ECF 290 ¶ 12.

7.  The parties shall file a declaration regarding final distribution and the status of the Borrower Program by August 6, 2026.

8.  A status hearing regarding the status and implementation of the Borrower Program is scheduled for September 10, 2026 at 3:00 p.m. via videoconference. The Court, in its discretion, may vacate the hearing based upon the status report.

9.  If needed, a compliance hearing shall be held, via videoconference, on October 8, 2026 at 2:00 p.m.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that final judgment is ENTERED in accordance with the terms of the Settlement, the Order Granting Plaintiffs'

United States District Court
Northern District of California

13

Unopposed Motion for Preliminary Approval of Settlement as modified and this order.

This document will constitute a final judgment for purposes of Rule 58, Federal Rules of Civil Procedure.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

This order resolves ECF 280, 281 and 290.

IT IS SO ORDERED.

Dated: May 15, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California